**UNITED STATES of America**

v.

**Louis J. TAGLIANETTI.**
**Crim. No. 6912.**

United States District Court
D. Rhode Island.

Oct. 4, 1967.

Charles J. Alexander, Sp. Atty., Dept. of Justice, Washington, D. C., Edward P. Gallogly, U. S. Atty., Providence, R. I., for plaintiff.

John A. Varone, Bruce M. Selya, Providence, R. I., for defendant.

## OPINION

DAY, Chief Judge.

On September 16, 1966, the defendant filed an appeal with the Court of Appeals For The First Circuit from the sentence imposed on him by this court following his conviction upon an indictment charging him with three violations of 26 U.S.C. § 7201. Thereafter, on December 27, 1966, the Government filed with said Court of Appeals a motion to remand the case to this court for "further proceedings". In said motion the Government stated in substance that the Federal Bureau of Investigation in March, 1962, installed a microphone, by means of a trespass, at the place of business of a close business associate of defendant

where defendant and others frequently met; that on various occasions between 1962 and 1965 defendant's conversations were monitored by agents of the Federal Bureau of Investigation, certain of which related to that indictment upon which the defendant was tried and convicted; that logs were kept in which there appear summaries of these and other conversations in which defendant participated; that although tape recordings were also made of said conversations, they were later routinely erased, but the logs are in existence; and that it does not appear from said logs or from inquiry into the handling of defendant's case by the Internal Revenue Service, the Department of Justice and the United States Attorney that any of said monitored conversations were used in evidence or were the source of leads to any evidence presented during the trial of said case; and requested that said case be remanded to this court "for the limited purpose of enabling the district court to examine the facts and to determine whether appellant's conviction should stand or a new trial be granted."

Thereafter, on January 17, 1967, the Court of Appeals remanded said case for the limited purpose requested by the Government in its motion, but with the cautionary instruction that "if the court is in doubt as to its ability, as the evidence develops, to resolve the matter as clearly as it could were a complete new trial granted, it may, and should, order such a new trial forthwith."

After said remand, this court, upon the motion of the defendant, entered its orders dated March 8, 1967 and April 17, 1967, directing the Government to deliver to the defendant and his counsel for examination and inspection copies of all logs containing summaries of all monitored conversations in which the defendant participated at said place of business of his close business associate, and copies of any and all memoranda and airtels summarizing such conversations. In addition, said orders directed the Government to furnish the defendant and his counsel with the names and addresses of all persons who participated in said monitoring and in the preparation of said logs, memoranda and airtels.

Defendant also moved for the production and inspection of all logs, memoranda and airtels containing summaries of the monitored conversations of other persons on said premises in which he did not participate. The Government objected to the production of these logs, memoranda and airtels on the ground that the defendant had no standing which entitled him to their production for examination and inspection. It did, however, submit all of said logs, memoranda and airtels to me for inspection in order to determine whether they, or any of them, should be produced. I examined all of them and concluded that they included no additional conversations in which the defendant participated, and that the conversations included therein have no relevance to this proceeding. Accordingly, I sustained the Government's objection to their production for examination and inspection by the defendant. Said logs, memoranda and airtels have been impounded and made available for appellate review if such review of my ruling in this respect is desired by the defendant.

After the logs of said monitored conversations were delivered to the defendant pursuant to said orders of this court, dated March 8, 1967 and April 17, 1967, John A. Varone, Esquire, of counsel for the defendant, on April 28, 1967, advised me and counsel for the Government in my chambers that the material produced pursuant to said orders disclosed the monitoring, on February 16, 1965, of a telephone conversation between the defendant and Robert G Crouchley, Esquire, an attorney in the office of Mr. Varone, who had been associated with him from November, 1962 until October 1, 1965, and who had assisted him while so associated in the preparation of the defendant's defense to the alleged offenses for which he was indicted on February 26, 1963. This indictment, No. 6912, contained three counts and charged that the defendant did wilfully and knowingly attempt to evade and defeat a

large part of the income taxes due and owing by him and his wife for the calendar years 1956, 1957 and 1958, in violation of 26 U.S.C. § 7201.

Thereafter a hearing was held by me pursuant to said order of the Court of Appeals to determine whether any of said monitored conversations were used as evidence or were used as leads to any evidence presented in the prosecution and trial of the defendant. During this somewhat protracted hearing, the Government and the defendant produced both testimonial and documentary evidence.

The evidence adduced at said hearing establishes that from March 6, 1962 until July 12, 1965, inclusive, agents of the Federal Bureau of Investigation (hereinafter called "F.B.I.") maintained an electronic surveillance of the place of business of a business associate of the defendant located at 168 Atwells Avenue, in the City of Providence, in the State of Rhode Island. The overall purpose of said surveillance was to gather criminal intelligence with respect to organized crime. It was conducted under the direction of Mr. John F. Kehoe, Jr., a Special Agent in the Boston office of the F.B.I. Special Agents assigned to the Providence office of the F.B.I. monitored conversations that occurred on said premises and made notes thereof in a log. Some of the conversations were also recorded on a tape recorder. At the end of each day said log and tape recording were mailed or delivered to Special Agent Kehoe in Boston. The monitors were instructed not to discuss the information recorded by them and were under orders not to disseminate said information to anyone except Special Agent Kehoe. Special Agent Kehoe would review the log and listen to the tape recording. After doing so, he would dictate a memorandum and an airtel summarizing the contents thereof. The tape recording would then be routinely erased. The memoranda and airtels were substantially duplicates and after a while he dictated only airtels.

An airtel is an inter-bureau teletype sent by air mail. The airtels were sent by him to the F.B.I. in Washington, D. C. and in some instances to certain field offices of the F.B.I. In no instance was an airtel disseminated to a field office or to the headquarters of the F.B.I. because it contained information concerning the defendant. The logs received by Special Agent Kehoe were retained by him in his office under lock and key until this proceeding. He kept a record of any of the material that was disseminated by him. His records reflected no dissemination outside the F.B.I. except for two memoranda that were transmitted to the Attorney General concerning an incident in New York. These memoranda were delivered to counsel for the defendant prior to the hearing, were not introduced into evidence and have no bearing on any claim that tainted evidence was used during said trial. Mr. Kehoe testified unequivocally that none of the information concerning the defendant was ever disseminated or communicated to the Internal Revenue Service or any other Federal agency.

The criminal tax evasion case against the defendant had its inception in June, 1961 when Internal Revenue Agent Robert J. Manning, was assigned to audit the defendant's tax returns for the years 1959 and 1960. After an extensive investigation he referred the case to the Intelligence Division of the Internal Revenue Service for criminal investigation on September 11, 1961. At that point, Special Agent James F. O'Brien of the Internal Revenue Service was directed to examine said case and determine whether it merited a criminal investigation. After examining Manning's written report and discussion with him, he concluded that said case warranted a criminal investigation. On September 20, 1961, he was placed in charge of that investigation.

Thereafter, Revenue Agent Manning continued to work on said case under the direction of Special Agent O'Brien until he was succeeded by Revenue Agent Frank A. Racca, on March 20, 1962. Manning's work papers and report were completed on March 5, 1962 and were

224

introduced as exhibits in this hearing. They were used and relied upon by Special Agent O'Brien as the source of leads to evidence produced in said criminal trial. In fact, it is clear that they contained the items of evidence and leads to every item of evidence that was presented by the Government during this trial, except the evidence of expenditures made by the defendant for food which was furnished by the defendant at an interview on April 23, 1962.

The evidence clearly establishes that Revenue Agent Racca adopted Manning's work product and worked under the direction of Special Agent O'Brien until he completed his report on June 26, 1962. That report reflects every item of evidence developed during the criminal trial and the figures contained therein were the same as those developed during said trial except for increases therein arising out of trial developments, such as a witness producing a ledger card that had been overlooked when previously requested by Special Agent O'Brien. And it is likewise abundantly clear that Revenue Agent Racca obtained his basic data from Manning's report which had been completed on March 5, 1962.

The evidence further establishes that Special Agent O'Brien had completed his investigative activities prior to March 5, 1962. His only work thereafter consisted of procuring certain documentary evidence of transactions by the defendant which had been previously discovered and of drafting his report. He completed his report and submitted it to his superiors on June 29, 1962. In the report he recommended that the defendant be prosecuted for tax evasion for the years 1956 to 1960, inclusive.

Thereafter his report was submitted to the Regional Counsel for the Internal Revenue Service in Boston. It was reviewed by Attorney Sanford S. Neuman of his staff. Thereafter he conferred with the defendant's Boston attorney and later with Special Agent O'Brien. He requested the latter to further document several items which appeared in his report. This he did and forwarded documentation thereof to Mr. Neuman in a supplemental report dated August 10, 1962, which is likewise an exhibit herein. It is clear that Special Agent O'Brien did not investigate any new areas at this time.

After reviewing said reports and exhibits included therein, Mr. Neuman forwarded the case to the Department of Justice by letter dated September 20, 1962, with the recommendation that the defendant be prosecuted for wilfully and knowingly attempting to evade and defeat a large part of the income taxes due and owing by him and his wife for the calendar years 1956 through 1958, inclusive.

It is clear that Mr. Neuman had no contact with any member of the F.B.I. and did not receive any evidence or information from any member of the F.B.I. His recommendation was based solely upon the information obtained from the defendant's attorney and that contained in the reports of Special Agent O'Brien.

Thereafter his recommendation for prosecution was reviewed and adopted by the Department of Justice, and, by letter dated October 26, 1962, the case was transmitted to the United States Attorney for the District of Rhode Island with instructions to prosecute the defendant for wilfully and knowingly attempting to defeat and evade a large part of the income taxes due and owing by him and his wife for the calendar years 1956, 1957, and 1958.

█ I am satisfied from the evidence that Special Agent O'Brien and Revenue Agents Manning and Racca did not have any contacts with any member of the F.B.I. and that none of them at any time received any information from any member of the F.B.I. None of the leads to evidence obtained by them, or actions taken by them to procure evidence in support of the prosecution of the defendant was in any way connected with or derived from said electronic surveillance which did not begin until March 6, 1962.

█ After said case was transmitted to the United States Attorney for this

District and an indictment was returned against the defendant, the indictment was assigned to Assistant United States Attorney Frederick W. Faerber who prepared the bill of particulars which the Government was directed to furnish upon the motion of the defendant. I am satisfied by the testimony of Mr. Faerber that in preparing said bill of particulars he relied solely upon information supplied by Special Agent O'Brien, and that he did not at any time have any contact with or receive any information concerning said case from any member of the F.B.I. and that he was not aware of said electronic surveillance until December, 1966, approximately eight months after the trial of the defendant in April, 1966.

Similarly, I am satisfied by the testimony of former Assistant United States Attorney Alton W. Wiley, who prepared said case for trial and who prosecuted it, that he did not procure any leads to evidence or evidence that was introduced during said trial, and that he relied exclusively on that evidence which had been originally procured by Revenue Agent Manning, and subsequently developed and refined by Special Agent O'Brien and Revenue Agent Racca. Likewise, I am similarly satisfied that he did not receive any information from the F.B.I. that was the product of said illegal electronic surveillance, and that he was not aware of said activity by the F.B.I. until December, 1966.

As hereinbefore recited, it appears that on February 16, 1965, an agent of the F.B.I. monitored a telephone conversation between the defendant and Robert G. Crouchley, Esquire, an attorney who was associated with the defendant's attorney, John A. Varone, from November, 1962 until October 1, 1965. From the evidence it appears that Mr. Varone was injured in an automobile accident on January 5, 1965, and as a result was away from his office until March, 1966. On the day following said accident he called Mr. Crouchley and requested him to take over his cases until he could return to his office. Mr. Crouchley never entered any appearance in the criminal case then pending against the defendant.

According to his testimony, Mr. Crouchley, some time prior to February 16, 1965, received a telephone call from "some member of the Internal Revenue Service" who stated that he had a form that the Government wanted the defendant to sign, and asked him to find out if the defendant would sign it and that he agreed to make that inquiry of the defendant. He testified that he did not see the form, that he could not recall the nature of the form, and, further, that he had no present recollection as to whether he had inquired of the person who called him as to the nature and purpose of said form. He testified that he thereupon instructed Mr. Varone's secretary to contact the defendant and that he may have also mentioned the request made of him to Mr. Varone. In any event, it is clear that the defendant, on February 16, 1965, while on the premises at 168 Atwells Avenue, made a telephone call to Mr. Crouchley at his office. That telephone call was monitored by Special Agent Edward J. Dunn, Jr., of the F.B.I. He made notes of the telephone conversation and at the same time recorded the conversation on a tape recorder. In his log for February 16, 1965, he made the following entry, among others:

"Louis Taglianetti talks to Bob Crouchley on phone about his I.R.S. case. Crouchley asks if Louie will sign form I.R.S. wants—Louie says no he got in trouble by doing that."

Mr. Crouchley testified that he did receive the telephone call from the defendant, and that he told the defendant that a revenue agent had a form which he wanted him to sign. He further testified that it was his best recollection that the defendant did not then indicate his unwillingness to sign said form. While his recollection of the telephone call was at best very vague, he insisted that he did not give any advice to the defendant during said conversation, and that he merely asked the defendant if he was willing to sign said form and had no other discussion with him. At the time of said

telephone call, Special Agent Dunn did not know Mr. Crouchley and made no attempt to ascertain his identity or occupation. He did not disclose the monitored conversation to anyone outside the F.B.I. His log and tape were forwarded to Special Agent Kehoe who, after receiving said log and after listening to said tape recording, prepared an airtel on February 18, 1965 wherein he stated that no pertinent information was developed on February 16, 1965. Mr. Kehoe likewise did not know Mr. Crouchley and made no effort to ascertain his identity.

██ From the evidence presented by the Government, it is clear beyond a reasonable doubt that the form to which Mr. Crouchley referred in his conversation with the defendant was a form used by the Internal Revenue Service to obtain from a taxpayer an extension of the three year statute of limitations on civil liability for unpaid income taxes and is known as Form 872. The form related to the defendant's income taxes for the year 1961, upon which the statute of limitations would expire on April 15, 1965. It appears that on January 20, 1965, the Chief of the Audit Division of the Internal Revenue Service had forwarded three copies of said Form 872 to the defendant and his wife with the request that all three copies be executed and returned by them to the Audit Division. The defendant did not reply to that letter. A second attempt to secure his consent to such extension was initiated on February 15, 1965, when Revenue Agent Racca was apparently directed to solicit the execution of said Form 872 by the defendant. Apparently he contacted Mr. Crouchley and received the impression that the defendant would not sign the form, while Mr. Crouchley only meant that he would ask the defendant if he would do so. In any event, his refusal was apparently communicated by Mr. Crouchley to the Internal Revenue Service and an entry was made to that effect in its records on February 17, 1965. I am satisfied that the only form which the Internal Revenue Service asked the defendant to sign in 1965 was Form

872 for the year 1961. As a result of his refusal to sign it, the three year statute of limitations for making civil adjustment to his income tax return for the year 1961 expired on April 15, 1965.

 It is well settled that the fact that the F.B.I. illegally monitored conversations of the defendant is not in itself a ground for setting aside the defendant's conviction. The issue is—did the Government use information gained by such activities either as evidence or as leads to evidence in the prosecution and trial of the defendant that resulted in his conviction. If it did, the conviction is tainted and should be set aside by me and a new trial accorded to the defendant. Wong Sun v. United States, 1963, 371 U.S. 471, 487, 83 S.Ct. 407, 9 L.Ed.2d 441; Nardone v. United States, 1939, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307; Silverthorne Lumber Co. v. United States, 1920, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319.

██ After a painstaking consideration of all of the evidence and the reasonable inferences to be drawn from it. I find that the Government has established by proof beyond a reasonable doubt that none of the information produced by said electronic surveillance was the source of evidence or leads to any evidence presented by it to the jury during the trial of the defendant. As hereinbefore pointed out, that evidence was developed by Special Agent O'Brien and Revenue Agent Manning, except for minor details, prior to the commencement of said electronic surveillance. In addition, I am satisfied beyond a reasonable doubt that none of the information gained thereby was ever disseminated outside the F.B.I. except for the so-called New York incident which counsel for the defendant conceded was immaterial and irrelevant to this hearing.

Counsel for the defendant contend that the defendant is entitled to a new trial as a matter of law because the F.B.I. monitored said conversation between the defendant and Mr. Crouchley. In support of this contention they cite Hoffa v.

United States, 1967, 387 U.S. 231, 87 S. Ct. 1583, 18 L.Ed.2d 738; O'Brien v. United States, 1967, 386 U.S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94, and Black v. United States, 1966, 385 U.S. 26, 87 S.Ct. 190, 17 L.Ed.2d 26. In my opinion each of those cases is clearly distinguishable on its facts from the instant case. While it is true that the Supreme Court in Hoffa v. United States, supra, did point out that apparently there was no direct intrusion into attorney-client discussions involved therein, I do not think it can be fairly said that the Supreme Court held that if there had been an intrusion into any attorney-client conversation a new trial would be mandatory. In both Black v. United States, supra, and O'Brien v. United States, supra, there were intrusions into conversations between the accused and his attorney regarding the charge upon which he was convicted.

■ The conversation between defendant and Mr. Crouchley which was intercepted did not relate to the then pending indictment against the defendant. It related to his civil liability for income taxes for the year 1961. During this conversation Mr. Crouchley admittedly gave no advice to the defendant. He was merely acting as a messenger to relay the request of a revenue agent to the defendant and to obtain the defendant's answer thereto for transmittal to said agent. Under the circumstances, it cannot be said that said conversation was privileged. United States v. McDonald, 1963, 2 Cir., 313 F.2d 832; Colton v. United States, 1962, 2 Cir., 306 F. 2d 633; United States v. Tellier, 1958, 2 Cir., 255 F.2d 441; Wilcoxon v. United States, 1956, 10 Cir., 231 F.2d 384; Gretsky v. Miller, 1958, D.C.Mass., 160 F.Supp. 914. In any event, since it is clear beyond a reasonable doubt that said conversation was unrelated to the criminal case then pending against the defendant, its interception does not automatically require that the defendant's conviction be set aside and a new trial granted. Granello v. United States, 1966, 386 U.S. 1019, 87 S.Ct. 1367, 18 L.Ed.2d 458. Moreover, it is clear beyond a reasonable doubt that said conversation was never disseminated outside the office of Special Agent Kehoe and was not deemed to be of sufficient importance to be included in his airtel of February 18, 1965.

In conclusion, I find that the Government has established beyond a reasonable doubt that the defendant's conviction was not tainted by the use of evidence or leads to evidence procured by said illegal electronic surveillance. Accordingly, his conviction must stand and he is not entitled to a new trial.