360 A.2d 857.

STATE *vs.* JAMES DRISCOLL.

JULY 30, 1976.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

750

DORIS, J. This is an indictment charging that in violation of G. L. 1956 (1969 Reenactment) §11-33-1, the defendant, James Driscoll, wilfully made false representations under oath to a grand jury which was investigating alleged irregularities involving the East Providence Zoning Board of Review. The case was tried to a Superior Court justice sitting with a jury which returned a guilty verdict against the defendant. Thereafter a judgment of convic-

tion was entered imposing a sentence of two years at the Adult Correctional Institutions, execution of which was suspended and the defendant was placed on probation for three years. From that judgment the defendant prosecutes his appeal to this court.

For a proper understanding of the appeal, a review of the factual background is necessary.

It appears from the record that in 1973, rumors were rife in the city of East Providence that certain individuals were soliciting funds from persons appearing before the Zoning Board in exchange for favorable action on their petitions. Sometime in the summer of 1973, one such instance was brought to the attention of defendant, Driscoll, an East Providence Councilman, by one, Aniello Ruggieri. Ruggieri stated to Driscoll that he had been approached by a builder named Stanley White who had sought money from him in order to have the Zoning Board grant a variance that Ruggieri had requested.

The defendant later consulted a friend who was a police officer as to the course he should follow with regard to Ruggieri's charges. Driscoll was warned that once the matter was reported to the authorities and brought to the attention of the Attorney General that he, Driscoll, would become involved, possibly to his political detriment. Nevertheless, defendant testified he decided to proceed and reported the matter to Mr. Orlando Andreoni, the then Assistant City Solicitor, with a request that the matter be investigated.

Later in the fall of 1973, Driscoll was personally approached by Stanley White who requested a meeting on what he said was a matter of importance. Not wanting White to come to his home, Driscoll suggested that they meet in the Glen Lyon ballfield, a short distance from his home, where a meeting of over one hour duration was held.

In the meantime, Solicitor Andreoni had requested an investigation by the Attorney General who assigned an investigator, Raymond Riley, to delve into the matter. A meeting between Riley and Driscoll, which was arranged by Mr. Andreoni, was held in his office on January 3, 1974. Mr. Andreoni later testified that although he was in and out during the discussion between Riley and defendant, he took no active part in the conversation.

The state alleges that in the course of his conversation with Riley, Driscoll described his ballfield meeting with White and stated that White had suggested that he could arrange a zoning board favor for one of Driscoll's constituents in exchange for a favorable city council vote on a matter of interest to White. This was included by Riley in the notes that he made during the interview and which he wrote up in the form of a statement that same evening or the next day. When the statement was shown to defendant several weeks later, he suggested some corrections but refused to make them himself, or to initial them when made, or to sign the statement as a whole, although according to Riley, Driscoll said the statement was basically correct. This was later denied by Driscoll.

Evidence was produced at the trial that Driscoll had not only told Riley about his meeting with White but had told several other persons as well. A former councilwoman testified that Driscoll reported to her that the conversation with White concerned an exchange of assistance. A councilman said that he was told the conversation involved political favors. Ruggieri testified that Driscoll told him White had offered money for a vote. Solicitor Andreoni, who was present for at least part of the meeting between Riley and Driscoll, after vainly trying to invoke the attorney-client privilege, testified reluctantly that his recollection of Driscoll's account to Riley could have

involved a vote and might have put defendant in a compromising position.

In the spring of 1974, the results of the Attorney General's investigation, centering on White and another man, were presented to a grand jury before whom all members of the zoning board and all members of the city council were called to testify. Among those called was defendant, Councilman Driscoll.

During his interrogation by the grand jury, Driscoll was asked about his conversation with White at the ballfield. He replied that it concerned various recreational improvements in the city and other inconsequential matters, and that he had been at a loss to understand why White had requested the meeting. He flatly denied that he had told Riley that White had offered to do a zoning favor in exchange for a city council vote.

The basis for the charge of perjury growing out of defendant's testimony before the grand jury was not whether White had actually made such an offer to Driscoll, but whether Driscoll had told Riley that White had made such an offer. The offense with which defendant is charged took place not on the Glen Lyon ballfield nor in Andreoni's office, but in the grand jury room when Driscoll denied, under oath, that he had made such a statement to Riley. See State v. Casala, 113 R. I. 690, 325 A.2d 540 (1974).

The defendant in his appeal to this court alleges six charges of error; four that deal with the allegedly prejudicial nature of the grand jury interrogation and the conduct of his trial in Superior Court, one that concerns the attorney-client privilege, and one based on a constitutional argument that he was entitled to have been given the warnings called for by Miranda v. Arizona, 384 U. S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), before being questioned by the grand jury. We find none of these argu-

ments sufficiently convincing to warrant a reversal of the judgment of conviction.

The defendant claims that the prosecutor's language was inflammatory and the grand jury was hostile. This allegation was also raised by defendant at the hearing in Superior Court on his unsuccessful motion to suppress the grand jury testimony.

On our reading of the record, we conclude there was evidence on which the grand jurors themselves could have inferred that defendant was not telling the truth and that the prosecutor's remark to that effect was not so inherently prejudicial as to impair defendant's right to a fair hearing. *State* v. *Mancino,* 115 R. I. 54, 340 A.2d 128 (1975); *State* v. *Plante,* 111 R. I. 386, 302 A.2d 804 (1973); *State* v. *Mancini,* 108 R. I. 261, 274 A.2d 742 (1971); *State* v. *Kozukonis,* 100 R. I. 298, 214 A.2d 893 (1965). We find nothing in the transcript indicating that the prosecutor went beyond those probing questions to all types of witnesses which are the stuff that grand jury investigations are made of since the grand jury's mission is, after all, to determine whether or not to return an indictment. *See United States* v. *Mandujano,* 44 U.S.L.W. 4629, 4632 (U. S. May 19, 1976).

We further conclude that the so-called hostility claimed to have been felt by defendant was engendered more by his admitted annoyance at being forced to wait for two hours while other witnesses arriving later than himself were called, rather than by any questions or actions by the grand jury itself.

The defendant next contends that he was improperly denied an opportunity to send for records not produced by the city clerk in response to a subpoena duces tecum.

The record indicates that when it appeared that the city clerk called as a defense witness had failed to bring all the records outlined in the subpoena, defense counsel

was offered a choice by the trial justice of proceeding with the witness on the basis of his recollection of the record or of withdrawing the witness and sending him back for the records. Since counsel elected to proceed with the witness the trial justice did not abuse his discretion in refusing to allow defendant to thereafter send for the records.

The defendant next alleges that the trial justice erred in failing to grant a motion to pass the case after the prosecutor had asked a prejudicial question of a defense witness.

When the prosecution improperly attempted to impeach a defense witness, the trial justice immediately took steps to cure the error by instructions to the jury in keeping with our well-established rule. Under these conditions, it is presumed that the jury obeyed the trial justice's instructions. *State* v. *Burke,* 101 R. I. 103, 220 A.2d 508 (1966); *State* v. *Lacy,* 87 R. I. 134, 138 A.2d 827 (1958); *State* v. *Peters,* 82 R. I. 292, 107 A.2d 428 (1954); *see* 48 A.L.R.2d 999. Under the circumstances, we find no merit in defendant's argument.

The defendant also contends that the instructions to the jury by the trial justice were erroneous and prejudicial. He alleges a disparity between the theory of the trial outlined at an early stage by the trial justice and his later charge to the jury. There is no merit in this argument since the theory outlined early by the trial justice was in the absence of the jury and could not in any way have affected its deliberations. On our own reading of the record, we find the charge to the jury by the trial justice to be correct and in no way prejudicial to defendant.

The defendant argues that he was improperly precluded from invoking the attorney-client privilege in order to prevent Solicitor Andreoni from testifying concerning the meeting between Riley and defendant. Driscoll bases his

argument on the fact that Mr. Andreoni had handled several personal legal matters for him, including a Workmen's Compensation case and a real estate transaction. He also argues that as Assistant Solicitor for the city of East Providence, Mr. Andreoni was empowered to act as legal counsel for members of the city council.

Admitting that Mr. Andreoni had served as Driscoll's attorney on several occasions, and that under the city charter he represents the councilmen in their official capacities, we find nothing in the record to indicate that when Driscoll reported the alleged zoning board impropriety to Mr. Andreoni that it was with any thought that he was making a confidential communication to a legal adviser with regard to a personal legal problem which should have been permanently protected from disclosure. *See* 8 Wigmore, *Evidence* §2292 at 554 (McNaughton rev. ed. 1961); *see also United States* v. *Taglianetti*, 274 F. Supp. 220, 227 (D. R. I. 1967), *aff'd* 398 F.2d 558 (1st. Cir. 1968), *aff'd* 394 U. S. 316 (1969); *Graham* v. *Williams*, 92 R. I. 102, 166 A.2d 412 (1961).

> "[w]herever the matters communicated to the attorney are intended by the client to be made public or revealed to third persons, obviously the element of confidentiality is wanting. Similarly, if the same statements have been made by the client to third persons on other occasions this is persuasive that like communications to the lawyer were not intended as confidential." McCormick, *Evidence* §91 at 188 (2d ed. 1972).

On the contrary, the report to Mr. Andreoni was made with the very purpose of instituting an investigation into the rumored zoning board irregularities which required Driscoll's communication to be passed along to other authorities.

The fact is that it was Mr. Andreoni himself who arranged the meeting between Riley and Driscoll at which

the information concerning the ballfield rendezvous with White was given to Riley. It is that conversation that defendant now seeks to cloak with the attorney-client privilege. The cited authorities agree that defendant's contention is not correct. One of the circumstances by which it is commonly apparent that the communication to an attorney by his client is not confidential is the presence of a third person who is not the agent of either client or attorney. Here, even if we might predicate a desire for confidence by the client, the policy of the privilege would not protect him. It follows, a fortiori, that communications to a third person in the presence of the attorney are not within the privilege. 8 Wigmore, *Evidence* §2311 at 599 (McNaughton rev. ed. 1961). Additionally, we note that the record indicates that Solicitor Andreoni failed to invoke the privilege on Driscoll's behalf at a meeting with Riley held after defendant was indicted, at which meeting he discussed with Riley his version of Driscoll's report of the ballfield conversation with White.

Accordingly, we find that nothing in the record indicates that defendant should have been permitted to invoke the attorney-client privilege in order to prevent Mr. Andreoni from testifying about the conversation between Riley and defendant.

Finally, defendant argues that he was entitled to be informed of his constitutional rights to remain silent; of self-incrimination and to the assistance of counsel during his appearance before the grand jury. In other words, he argues that the prosecutor should have given him the so-called *Miranda* warnings before commencing his interrogation. *Miranda* v. *Arizona, supra.*

The defendant cites *United States* v. *Mandujano,* 365 F. Supp. 155 (W. D. Tex. 1973), wherein the District Court held that a person in the position of a virtual putative defendant in custody is entitled to the full benefit

of *Miranda* warnings when called before the grand jury. In that case, Mandujano, a known heroin user, was asked about his attempt to procure heroin for an undercover agent. Rather than admit dealing in narcotics, he denied ever having participated in the transaction. On appeal the 5th Circuit Court of Appeals upheld the finding that, as a person known to have committed a crime and one whom the government planned to indict, Mandujano was entitled to the *Miranda* warnings. *United States* v. *Mandujano,* 496 F.2d 1050 (5th Cir. 1974).

Driscoll in his appeal now likens himself to Mandujano. He maintains that the prosecution and the grand jury had him listed on its scorecard of potential defendants, and was therefore attempting to force him either to incriminate himself or commit perjury. As a potential defendant, he argues he was entitled to have been informed of his rights by way of the *Miranda* warnings and not having been thus informed, his motion to suppress the grand jury testimony should have been granted.

On appeal, the United States Supreme Court reversed the *Mandujano* decision holding that a person testifying before a grand jury is not entitled to the *Miranda* warnings, does not have an absolute right to remain silent, and does not have a right to the assistance of counsel in the grand jury room. *United States* v. *Mandujano,* 44 U.S.L.W. 4629 (U. S. May 19, 1976).

> "To extend the concepts of *Miranda,* as contemplated by the Court of Appeals, would require that the witness be told that there was an absolute right to silence, and obviously any such warning would be incorrect, for there is no such right before a grand jury. Under *Miranda,* a person in police custody has, of course, an absolute right to decline to answer any question, incriminating or innocuous, see *Michigan* v. *Mosley,* 423 U. S. 96 (1975), whereas a grand jury witness, on the contrary, has an absolute duty to

answer all questions, subject only to a valid Fifth Amendment claim. * * *

A witness 'before a grand jury cannot insist, as a matter of constitutional right, on being represented by counsel * * *' *In re Groban*, 352 U. S. at 333. Under settled principles the witness may not insist upon the presence of his attorney in the grand jury room." *Id.* at 4634-35. *See also In re Buxton*, 111 R. I. 480, 482, 304 A.2d 350, 352 (1973).

The defendant obviously cannot claim a constitutional right which has been expressly denied by the United States Supreme Court. There is no merit in the defendant's argument.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed and the case is remanded to the Superior Court.

*Julius C. Michaelson*, Atty. Gen., *Gregory L. Benik*, Asst. Atty. Gen., *Judith Romney Wegner*, Spec. Asst. Atty. Gen., for plaintiff.

*Albert B. West, Thomas C. Mullaney, Jr.*, for defendant.