Pasco DeFUSCO

v.

Frank GIORGIO, Jr., et ux.

No. 79–400–Appeal.

Supreme Court of Rhode Island.

Jan. 29, 1982.

---

William J. Riccitelli, Cranston, for plaintiff.

Keven A. McKenna, Providence, for defendants.

## OPINION

KELLEHER, Justice.

The defendants in this civil action, Frank Giorgio, Jr., and his wife Pauline (the Giorgios), appeal the denial of their motion to vacate a consent judgment under Rule 60(b) of the Superior Court Rules of Civil Procedure. The facts pertinent to their appeal are as follows.

The Giorgios had obtained funds from the plaintiff Pasco DeFusco (DeFusco) and executed a promissory note on September 8, 1975, in the amount of $44,000. On January 14, 1977, DeFusco instituted suit on the note to recover a balance allegedly due in the amount of $33,265.67, asserting that the Giorgios were in default. Through their counsel at the time, the Giorgios answered the complaint, denying that the sum DeFusco sought to recover was the amount outstanding on the note. In their answer they also interposed the affirmative defenses of fraud and usury, charging that their signatures on the note had been procured through threats and under duress and that

the interest terms of the promissory note were usurious and unenforceable under state law.

On the day of trial, the Giorgios presented the trial justice with a consent judgment drafted by their attorney, agreeing to judgment for DeFusco in the amount of $38,500. This figure included the balance DeFusco alleged was due on the note, interest and costs, plus DeFusco's attorney's fees. Under the terms of the judgment, the Giorgios were to pay DeFusco $3,500 by the end of November 1977, with the balance to be paid in equal monthly installments with 15 percent interest per annum. The Giorgios also agreed to secure the judgment debt by a mortgage on their real estate. The consent judgment was signed by both Frank and Pauline Giorgio and was entered on November 25, 1977.

According to DeFusco, the Giorgios failed to make payments in compliance with the provisions of the judgment. He obtained an execution and levied on their property. In an effort to prevent the impending sale, the Giorgios engaged new counsel, currently representing them on this appeal, and moved to vacate the consent judgment and to recall the execution. The motion to vacate the judgment was made within a few days of the running of the one-year time limitation prescribed by Super.R.Civ.P. 60(b).

After a hearing on these motions, the trial justice determined that, prior to signing the consent judgment, the Giorgios had been fully advised by competent counsel of their rights and of the ramifications of the entry of such a judgment. Concluding that the Giorgios had not satisfied their burden to establish that the "judgment was entered by mistake, accident, or duress, or misrepresentation," he denied the motions.

We now review the Giorgios' assertions of errors by the trial justice, bearing in mind the circumspect nature of our review of such appeals. As noted by Professor Kent: "An appeal from an order denying a motion to vacate judgment under Rule 60(b) presents only the correctness of that order and does not raise questions concerning the correctness of the judgment sought to be vacated." 1 Kent, *R.I.Civ.Prac.*, § 60.10 at 457 (1969).

The Giorgios relied in part on subsections (b)(3) (fraud, misrepresentation, or other misconduct of an adverse party) and (b)(6) (any other reason justifying relief from operation of the judgment) of Rule 60 in seeking to vacate the consent judgment. They assert that the trial justice's ruling was grounded on an incorrect standard of law because he failed to make express findings on the question of whether the Giorgios had established meritorious defenses to DeFusco's original action to recover on the promissory note. Furthermore, the Giorgios contend that it would be inequitable to deny them their day in court to present such meritorious defenses.

 This argument misperceives the nature of a consent judgment; the Giorgios have, in effect, already had their day in court to present these defenses. By entering into the consent judgment, they waived all defenses relating to the subject matter underlying the judgment. *Walling v. Miller*, 138 F.2d 629, 631 (8th Cir. 1943), *cert. denied*, 321 U.S. 784, 64 S.Ct. 781, 88 L.Ed. 1076 (1944); *Inmates of the Boys' Training School v. Southworth*, 76 F.R.D. 115, 124 (D.R.I.1977). A judgment entered by consent cannot "be opened, changed, or set aside without the assent of the parties in the absence of fraud, mutual mistake or actual absence of consent * * *." *Douglas Construction And Supply Corp. v. Wholesale Center of North Main St. Inc.*, 119 R.I. 449, 452, 379 A.2d 917, 918 (1977); *In re Julie*, 114 R.I. 419, 422–23, 334 A.2d 212, 214–15 (1975) (Joslin, J., concurring); *Matthews v. Matthews*, 105 R.I. 121, 126, 249 A.2d 647, 650 (1969). Thus, for purposes of the trial court's determination of whether grounds existed under Rule 60(b)(3) and (b)(6) to set aside the judgment, any defenses that the Giorgios may have had against DeFusco's recovery on the note were irrelevant. *See also Kitchens v. Clay*, 224 Ga. 325, 161 S.E.2d 828 (1968) (in action to set aside judgment, issue of fraud in suing on promissory note alleged to have been forged

is not material when moving party had been aware of defense and had failed to prove allegation in prior litigation); *Gulf Acceptance Loan Corp. v. Demas*, 205 So.2d 855 (La.Ct.App.1968) (because defendant failed to present defense that creditor did not remit unearned capitalized interest as of accelerated maturity date of note, default judgment will not be set aside in absence of showing good reason or cause to timely appear and present defense); *Bundy v. Ayscue*, 5 N.C.App. 581, 169 S.E.2d 87 (1969) (question of meritorious defense is immaterial in absence of any showing of mistake, surprise, or excusable neglect in failing to defend the action).

The Giorgios bore the burden of convincing the trial court that legally sufficient grounds, as specified under Rule 60(b), existed to warrant vacating the judgment. *See Pasquazzi v. Pasquazzi*, 119 R.I. 554, 555, 381 A.2d 233, 233–34 (1977). To this end they attempted to show that their consent to the judgment had not been given voluntarily, but rather was a result of duress and coercion. Pauline Giorgio testified that on the day she signed the consent judgment, she was extremely distraught. She stated, "Anything could have been put before me at that time of the day on that particular day, and it would have been completely incomprehensible to me at that time." She explained that she agreed to the judgment out of fear for the safety of her son who had been bringing the weekly payments on the note to DeFusco. Her fear, she stated, stemmed from the possible consequences she perceived might follow if she testified about "loan sharking" activities of DeFusco. The foundation for her perceptions appears to be limited to the alleged experience of a personal friend who also owed DeFusco money. Mrs. Giorgio elaborated:

"We have a personal friend of ours who had borrowed money from Mr. DeFusco and was paying him also on a weekly basis, and the weekly money he was bringing to Mr. DeFusco was never deducted from the principal either, and on one occasion he went to Mr. DeFusco's house to tell him he would no longer keep the payments up, and at that time, he was assaulted by Mr. DeFusco and later the individual brought charges against Mr. DeFusco. I feel and really believe, and still do, that he is capable of such a thing."

Mrs. Giorgio did not allege that DeFusco had at any time made specific threats against her or members of her family. Further, the record contains no indication whatsoever of any coercion exerted by DeFusco before or during the period elapsing from the institution of his suit to the entry of the consent judgment. Although Mrs. Giorgio believed that her attorney was aware of how she felt about DeFusco with regard to his "loan sharking" activities, she admitted that on the day she signed the consent judgment she did not inform her attorney that she feared for the physical well-being of her son. Furthermore, she agreed that her attorney had advised her of the nature of the judgment and that she had not objected to any of its terms. Mr. Giorgio took the stand only briefly, stating that he agreed with the testimony of his wife.

In rebuttal DeFusco called the Giorgios' former attorney, who testified that he believed the Giorgios had signed the judgment voluntarily and willingly. He added that they did not appear to be under duress when it was signed; that Mrs. Giorgio appeared no more nervous or upset on that day than she had on other occasions when they discussed the case and other matters he had handled for them; that Mr. Giorgio seemed fully aware of what he was signing; and, finally, that he had advised Mr. Giorgio that if they settled the case, they waived their right to have a court determination that the loan was usurious and unenforceable. In the face of such advice, he was instructed by Mr. Giorgio to work out a possible arrangement with DeFusco's attorney to settle the case. DeFusco also presented the testimony of an individual who had been present at the meeting with Mr. Giorgio and his attorney on the day set for trial in this matter. This witness testified that Mr. Giorgio had informed his at-

torney "that he wanted to have the case settled at all costs because of adverse publicity that would result from the case if it was heard."

■ Whether or not relief from a judgment will be granted rests within the sound discretion of the trial justice. *Equal Employment Opportunity Commission v. Safeway Stores, Inc.*, 611 F.2d 795, 799 (10th Cir. 1979); *Chase v. Almardon Mills, Inc.*, 102 R.I. 579, 580–81, 232 A.2d 390, 391 (1967); *see also Pasquazzi v. Pasquazzi*, 119 R.I. at 555, 381 A.2d at 233; *Gaccione v. Gaccione*, 112 R.I. 676, 680, 314 A.2d 423, 425 (1974). In light of the evidence admitted at the hearing, the conclusions of the trial justice are not clearly erroneous, and we can perceive no abuse of discretion in letting the consent judgment stand.

■ The Giorgios also fault the trial justice's conclusions because, they contend, he relied on their former attorney's testimony, which was improperly admitted in breach of the attorney-client privilege. The attorney-client privilege protects from disclosure only the confidenial communications between a client and his or her attorney. *See State v. Driscoll*, 116 R.I. 749, 757, 360 A.2d 857, 861 (1976); *Williams v. Rhode Island Hospital Trust Co.*, 88 R.I. 23, 47–48, 143 A.2d 324, 337–38 (1958). Hence, counsel "may testify to anything which is not the subject of an express disclosure" without violating this privilege. 8 Wigmore, *Evidence* § 2306 at 591 (McNaughton rev. 1961). After carefully reviewing the hearing transcript, we find no breach of the attorney-client privilege in the instant case.

■ One can glean from our previous description of his testimony that the Giorgjos' former attorney was permitted to answer questions relating generally to his observations of his former clients' demeanor, his own assessment of their knowledge about what they were signing, and his recollection of whether they appeared to be under duress in entering into the consent judgment. The admission of such testimony was not error. " '[A] legal adviser may give evidence of a fact which is patent to his senses'—of anything which he either sees or even hears, so far as it is otherwise patent." 8 Wigmore, *Evidence* § 2306 at 591. *See People v. Bolden*, 99 Cal.App.3d 375, 160 Cal.Rptr. 268 (1979) (attorney may give opinion regarding client's mental competency based upon observations of client without violating attorney-client privilege); *State v. Manning*, 162 Conn. 112, 291 A.2d 750 (1971) (attorney may testify generally about whether particular conversations with client took place). *See also Farr v. United States*, 314 F.Supp. 1125 (W.D.Mo. 1970), *adopted*, 436 F.2d 975 (8th Cir.), *cert. denied*, 402 U.S. 947, 91 S.Ct. 1639, 29 L.Ed.2d 116 (1971) (attorney-client privilege does not extend to advice given to petitioner who claimed that he had not been informed of certain matters prior to executing waivers of indictments and that guilty pleas were not understandingly made).

Moreover, the trial justice precluded disclosure of any confidential communications relating to the instructions the Giorgios had given their former attorney in settling the case. Finally, it should be noted that the attorney's testimony concerning the advice he had given the Giorgios before they signed the consent judgment and his explanation that Mr. Giorgio told him to settle the case notwithstanding the consequent waiver of their affirmative defenses to the action were elicited on cross-examination by the Giorgios' current counsel after they had expressly waived their attorney-client privilege.

We turn now to the Giorgios' remaining challenge of the lower court's ruling—that the consent judgment is void and should be vacated pursuant to Rule 60(b)(4). This contention is premised on the view that the public policy of this state prohibiting usurious contracts would be vitiated if this judgment, allegedly predicated upon a usurious loan, were permitted to stand. Essentially, the Giorgios would have this court declare that, as a matter of law, a litigant may never waive the defense of usury. We decline to adopt such a sweeping rule.

The General Assembly in G.L.1956 (1969 Reenactment) § 6–26–2, as amended by

P.L.1981, ch. 173, § 2, has prescribed the maximum rate of interest chargeable by any person, partnership, association, or corporation when lending money. Any contract in which the yearly interest rate exceeds the maximum permissible rate set by the Legislature is expressly declared void by § 6–26–4. This statute not only affords borrowers relief from the obligations of usurious agreements but also entitles them to recover any payments made of either principal or interest. In *Nazarian v. Lincoln Finance Corp.*, 77 R.I. 497, 78 A.2d 7 (1951), we had occasion to interpret the remedial provisions of the precursor of our current usury statute, G.L.1938, ch. 485, § 4, which granted borrowers similar relief from usurious contracts. Recognizing the clear legislative intent to provide severe penalties against lenders who violate the usury laws, we concluded that the remedy granted to borrowers was not restricted merely to a defense of actions by lenders on usurious loans, rather it entitled borrowers to bring affirmative actions against such lenders to recover any payments of principal or interest they may have made. It should also be noted that § 6–26–3, as amended by P.L.1970, ch. 263, § 1, makes a willful and knowing violation of the usury laws a criminal offense punishable by imprisonment for up to five years.

A strong public policy against usurious transactions is clearly manifested by these provisions. Nevertheless, we do not believe that the Legislature intended thereby to preclude a debtor from waiving a defense of usury under all circumstances. We emphasize that the case at bar does not present a situation in which a borrower has executed a release of all claims or defenses of usury either contemporaneous with the signing of a promissory note or in exchange for additional advances of funds. The coercive nature of such situations, in light of the pressing financial needs of the borrower, has persuaded many courts to hold such releases invalid as contravening state usury statutes. *See* cases collected in annot. 99 A.L.R. 600 (1935).

In our opinion, however, waiver of a usury defense should be permitted when it is freely and knowingly made after reasoned reflection for the legitimate purpose of avoiding or settling litigation. *See Shoenfelt v. Donna Belle Loan & Investment Co.*, 172 Okl. 346, 348, 45 P.2d 507, 509–10 (1935); *see also Siegal v. Lechler*, 130 Colo. 338, 342–43, 275 P.2d 949, 951 (1954); *Gunn Plumbing, Inc. v. Dania Bank*, 252 So.2d 1, 4 (Fla.1971). The instant case falls within this narrow category of cases in which a debtor's release of a usury claim is not merely a subterfuge to evade the usury statutes. The Giorgios concede that the note in question is not usurious on its face. Indeed, the facts surrounding its execution, which facts might support their claim of usury, are hotly disputed by the parties. Furthermore, having rejected the Giorgios' claim of duress, it is reasonable to infer that the trial justice gave great weight to the testimony of the one witness uninvolved in the litigation who stated that the motivation for the Giorgios' decision to consent to judgment was their desire to avoid the adverse publicity they believed would accompany such litigation. For these reasons, we think the Giorgios should be bound by their decision to release any potential defense of usury.

The defendants' appeal is denied and dismissed, the order denying the motion to vacate judgment is affirmed, and the case is remanded to the Superior Court.