Antonio M. FRIAS et al.

v.

Joseph MURATORE et al.

No. 98–212–Appeal.

Supreme Court of Rhode Island.

Nov. 3, 1999.

Bruce H. Cox, E. Providence, Marilyn Shannon McConaghy, Providence, Neena S. Savage, for Plaintiffs.

Robert A. Scott, Westerly, Judith I. Scott, Henry J. Almagno, Providence, Robert S. Powers, for Defendants.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## O P I N I O N

PER CURIAM.

The defendants, Joseph Muratore, alias d.b.a. Muratore Agency, Inc., alias, and Muratore Agency, Inc., alias, have appealed from an order denying their motion to vacate judgment entered in favor of the plaintiffs, Antonio M. Frias, Rose M. Frias (collectively, the Friases), and Universal, Inc. (Universal).[1] This case came before the Supreme Court for oral argument on October 4, 1999, pursuant to an order directing the defendants to show cause why the issues raised by this appeal should not be summarily decided. After hearing the arguments of counsel and after reviewing the memoranda submitted by the parties, we are of the opinion that cause has not been shown. Therefore, the case will be decided at this time.

On December 16, 1994, the Friases entered into a written agreement with one Thomas F. Irons (Irons), the President of Casale Bros., Inc. and Classic Realty, Inc., (collectively, Sellers), to purchase Casale Bros. Liquors, a commercial property located in Providence, Rhode Island. Joseph Muratore (Muratore), a defendant, served as the broker for this sale, and upon signing the agreement, the Friases eventually paid him a total of $25,000.[2] By means of an exclusive-listing agreement, Muratore was to be paid a commission of 8 percent "[u]pon a sale or the signing of a valid Sales Agreement, or the procurement of a purchaser at said price."

The Friases entered the premises in December 1994, and with the help of Irons, began to run the business, seeking a profit during the holiday season. In March 1995, because plaintiffs and Irons decided by mutual agreement that some of the initial contract's contingencies, such as financing, could not be met, they entered into a mutual release, effectively rescinding their agreement.

In April 1995, plaintiffs commenced an action against Muratore, seeking recovery of the $25,000 and alleging in their complaint that Muratore had spent the money.[3] On October 26, 1995, plaintiffs filed a motion for summary judgment, arguing that because Muratore wrongfully withheld their deposit moneys, they were entitled to relief pursuant to the real estate recovery fund (fund) which was established by the Department of Business Regulations (DBR) pursuant to G.L.1956 § 5–

---

1. Universal is a Rhode Island corporation incorporated by the Friases for the purpose of purchasing Casale Bros. Liquors.

2. Although the agreement refers to a $10,000 deposit paid by plaintiffs to Muratore, it is undisputed that a total of $25,000 was paid in installments to this defendant, and it is the latter sum that constitutes the subject matter of this appeal.

3. It is undisputed that Muratore never placed the money in an escrow account, and he admitted in his deposition testimony that he expended the funds for his personal use.

20.5–5.[4] In response, Muratore claimed that the moneys represented a commission due him by virtue of the exclusive-listing agreement.

The plaintiffs' motion for summary judgment was granted, and judgment was entered against Muratore in the amount of $25,000 on March 11, 1996. This judgment was not appealed. Thereafter, plaintiffs filed a verified claim, seeking payment of $25,000 from the fund, and on April 10, 1996, an order entered granting plaintiffs' claim and ordering the DBR to make payments to plaintiffs. Approximately six months later, on October 4, 1996, defendants filed a motion to vacate the order granting plaintiffs' motion for summary judgment. The defendants argued that the court's order failed to differentiate between moneys for the purchase of real estate and those sums expended for the purchase of the business. If, as defendants claimed, the latter moneys are not recoverable from the fund, Muratore may have rights against DBR in the event DBR seeks to recover the funds from Muratore.

In any case, the trial justice denied the motion to vacate, and defendants appealed. The single issue on appeal is whether the trial justice's denial constituted an abuse of discretion. As noted by counsel for plaintiffs, defendants have not presented any new evidence in this appeal not already presented to the trial justice.

■ It is well settled that "[a] motion to modify a court order made pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure lies 'within the sound discretion of the trial justice and his or her ruling will not be disturbed on appeal absent a showing of abuse of discretion or error of law.'" *Zannini v. Downing Corp.*, 701 A.2d 1016, 1017 (R.I.1997) (*quoting Iddings v. McBurney*, 657 A.2d 550, 553 (R.I.1995)). The burden of proof is on the moving party. *Iddings*, 657 A.2d

at 553. Having examined the evidence in this case, it is our opinion that defendants have failed to meet that burden.

■ First, any evidence here of mistake, inadvertence, substantial surprise, or excusable neglect is insufficient to warrant relief under Rule 60(b). The defendants have erroneously assumed that the trial justice would have found that Muratore was entitled to recovery of the commission from *plaintiffs* had the justice been afforded the opportunity to read the exclusive listing agreement. The exclusive-listing agreement, however, is a contract between Irons and Muratore. In Rhode Island, a broker such as Muratore is entitled to recover his or her commission only upon his or her procuring a "ready, able and willing" buyer. *Kirby, Inc. v. Weiler*, 108 R.I. 423, 429, 276 A.2d 285, 288 (1971). Assuming that plaintiffs were willing buyers, though unable to obtain the financing that was a condition precedent to the contract, any recovery of a commission owed to Muratore would be due from Irons and not from plaintiffs. There is no basis in law for an escrow agent, in the absence of an agreement, to claim as his own, money paid by a party to the escrow agent simply because a third party owes the escrow agent a very similar amount.

■ Second, the defendants have not provided clear and convincing evidence of fraud in order to justify our vacating the judgment. *Forcier v. Forcier*, 558 A.2d 212, 214 (R.I.1989). The defendants argued that the plaintiffs had no intention of obtaining the necessary financing to satisfy the contract, but intended instead to profit from the enterprise during the time they operated the business, then to walk away from the sale. The defendants alleged that the plaintiffs had contracted to obtain a mortgage on property located in Bristol, Rhode Island, which they had listed on the

---

4. Under G.L.1956 § 5–20.5–5(a)(1), "any person aggrieved by an act, representation, transaction, or conduct of a duly licensed real estate broker or real estate salesperson, upon

the grounds of fraud, misrepresentation or deceit, may recover by order of the [S]uperior [C]ourt * * * damages sustained by the fraud, misrepresentation, or deceit * * *."

contract as their primary residence. According to the defendants, in a bankruptcy proceeding open at the time the parties signed the purchase-and-sales agreement, however, the plaintiffs failed to list the Bristol property as an asset. We conclude that the evidence that the plaintiffs listed their Bristol property in one document and not another creates a discrepancy but does not necessarily establish actual fraud on the plaintiffs' part. *See id.*

In conclusion, therefore, we deny and dismiss this appeal, and affirm the judgment of the Superior Court, to which we return the papers in the case.