DECISION
Before this Court is Michael Bruneau's (hereinafter "Defendant") Motion to Dismiss criminal information charging him with violating Rhode Island Family Court Order No. P99-1176A, after two prior convictions of domestic violence crimes on the 16th day of August, 1999, and the 10th day of September, 1999. The previous convictions were of G.L. 1956 § 15-15-3, Violation of a Family Court Restraining Order, and G.L. 1956 § 12-29-4, Violation of a No Contact Order, respectively. Jurisdiction is pursuant to G.L. 1956 § 8-12-15.
 FACTS/TRAVEL
On July 28, 1999, Master Sammartino issued Rhode Island Family Court Order No.
P99-1176A (Temporary Order Protection From Abuse). The Temporary Restraining Order (hereinafter "TRO") requires the Defendant to act in compliance with the following guidelines:
 1.) Defendant is restrained and enjoined from contacting, asaulting, molesting, or otherwise interfering with Plaintiff at home, on the street, or elsewhere.
 2.) That visitation with child shall be supervised, with Defendant's mother to supervise. Arrangements, by phone, to be made with supervisor. Defendant shall refrain from consumption of alcohol, prior to and during visitation.
State's Exhibit 1A and 1B, Full.
The aforementioned TRO was extended through August 18, 2000, subsequent to a hearing at which Master Sammartino determined that the requisite standard for "good cause" necessary to extend such an order was satisfied pursuant to G.L. 1956 § 15-15-4 (a) (2). Subsequent to the hearing and extension of the TRO through August 18, 2000, the Defendant was convicted of violating G.L. 1956 § 15-15-3 on September 10, 1999. State's Exhibit 3, Full. The Clerk's Office then mailed a copy of the TRO to the Defendant pursuant to G.L. 1956 § 15-15-4.1(a) and (f).
On January 14, 2000, Mrs. Bruneau received a telephone call from the Defendant in regard to his visitation with the child. At that time, Mrs. Bruneau detected that the Defendant's speech was slurred in a manner indicative of alcohol consumption. After detecting the slurred speech, Mrs. Bruneau ended the phone call and suggested that the Defendant reschedule the visit to the following day. Mrs. Bruneau then turned the ringer on her phone to the off position in order to avoid any further contact with the Defendant.
Subsequent to the phone call, Mrs. Bruneau heard a voice at her rear door, which she recognized as that of the Defendant. Although she admittedly never saw the Defendant's face, Mrs. Bruneau indicated that she saw the back of the Defendant as he exited through her stairwell after repeatedly banging and kicking on Mrs. Bruneau's door. The Defendant was never allowed into the apartment, although an individual at the residence did open the door, at which time Mrs. Bruneau notified the Defendant of her intent to call the police if he did not leave immediately. Shortly after the Defendant exited the premises, Mrs. Bruneau notified the police and took note of a call as the number appeared on her Caller ID Box. The police patrolled the area and traced the telephone number to a phone booth in close proximity to Mrs. Bruneau's residence. The Defendant was then arrested at the telephone booth by Officer Michael Strain of the Cumberland Police Department for violation of Rhode Island Family Court Order P99 — 1176A.
Although the Defendant had a right to a trial by jury, he waived this right pursuant to G.L. 1956 § 12-17-3 on January 31, 2001. As a result, the Defendant received a trial before this Court on the same day. At the conclusion of the trial, the Defendant made a Motion to Dismiss the criminal information against him based on four distinct grounds. The grounds are as follows: 1) the State failed to prove the defendant violated the No Contact Order issued on July 28, 1999; 2) the State failed to prove the Defendant had actual notice of the later permanent Order issued on August 18, 1999; 3) the State failed to prove beyond a reasonable doubt that the Defendant's words and acts on January 14, 2000, violated the August 18, 1999, Order; and, 4) the State failed to prove that the Defendant had previously been twice convicted of domestic violence crimes.
 STANDARD OF REVIEW
Due to the fact that the Defendant waived his right to a trial by jury pursuant to G.L. 1956 § 12-17-3, the trial justice must act as the fact-finder in ruling upon the Motion to Dismiss. State v. McKone,673 A.2d 1068 (R.I. 1996). "In that role, when passing upon the Motion to Dismiss, he or she is required to weigh and evaluate the trial evidence, pass upon the credibility of the trial witness, and engage in the inferential process, impartially, not being required to view the inferences in favor of the nonmoving party, and against the moving party." Id. at 1072-1073. After examining all evidence in the manner as prescribed above, the trial justice must determine if the evidence set forth is sufficient to establish guilt beyond a reasonable doubt. Id. If the evidence is found to be sufficient to establish guilt beyond a reasonable doubt, the trial justice shall deny the Motion to Dismiss, and if both parties have rested, enter a decision and judgment of conviction thereon. Id. If the evidence is insufficient to satisfy a finding of guilt beyond a reasonable doubt, then the trial justice shall grant the motion and dismiss the case. Id.
 ACTUAL VIOLATION OF THE JULY 28, 1999 ORDER
The Defendant alleges that the State has failed to prove any violation of the July 28, 1999, TRO because the January 14, 2000, incident, even if proven to be true, occurred after the July 28th TRO had expired. As a result, the Defendant asserts that the State has incorrectly rested its proof of the violation on the July 28, 1999, TRO as opposed to the August 18, 1999, TRO.
Although the Orders are embodied in different documents, this argument regarding the extension of the TRO is without merit. In general, notice and a hearing are required to modify a preliminary injunction or order. 42 Am. Jur. 2d Injunctions § 311 (2000); Super. R. Civ. P. 65. Marketing Specialists, Inc. v. Service Marketing of Montana, Inc.,693 P.2d 540 (Mont. 1985). When a court is faced with an issue of modifying or extending a preliminary order, the main purpose of the original order must be kept in mind as well as the interests of the parties involved. See 42 Am. Jur. 2d at § 309. Pursuant to G.L. 1956 § 15-15-4(a)(2), a TRO may be extended for an additional period of time provided that the standard of "good cause" is satisfied and so long as a hearing is provided. G.L. 1956 § 15-15-4(a)(2) also states that a TRO may be extended in order to prevent "immediate and irreparable injury, loss, or damage."
In the instant matter, Master Sammartino concluded that the requirement of "good cause" was met. This decision was within Master Sammartino's power, as the decision to modify an order lies within the discretion of the court that issued the original order. Friss v. Muratore, 740 A.2d 340
(R.I. 1999); Blais v. Blais, 652 A.2d 963 (R.I. 1995); Super. R. Civ. P. 60 (B); 42 Am. Jur. 2d at § 303. In addition, the Defendant was notified of the hearing and was also served a copy of the TRO. Such notice is evidenced by State's Exhibit 1C, Full, which indicates that Sheriff Frank J. Rao personally served a copy of the hearing date and Domestic Abuse Summons to the Defendant on August 10, 1999. Although the Defendant had notice of the hearing, he did not appear before the Court and Master Sammartino extended the TRO through August 18, 2000, based on "good cause." State's Exhibit 1B, Full.
This Court is satisfied that Master Sammartino's decision to extend the Order based on "good cause" was supported by the facts and circumstances of the matter before the Court. Therefore, the State was correct in resting its proof of a violation on the July 28, 1999, TRO as opposed to the August 18, 1999, extension as the original TRO had not expired, but had rather been extended as shown by P99-1176A. State's Exhibit 1B, Full.
 NOTICE OF THE AUGUST 18, 1999 ORDER
The Defendant next argues that he was never provided with actual notice of the later permanent Order as issued on August 18, 1999. In doing so, the Defendant states the violation of G.L. 1956 § 15-15-3 (d) and (e) requires the Defendant to receive actual notice of the violation in accord with G.L. 1956 § 15-15-5(d).
While the Defendant is correct in stating that G.L. 1956 § 15-15-3
(d) and (e) reference the actual notice requirement of G.L. 1956 §15-15-5 (d), this requirement does not apply to the matter before the Court. G.L. 1956 § 15-15-5 (d) provides in pertinent part:
 "(d) When service of the temporary order issued pursuant to G.L. 1956 § 15-15-4 has not been made and/or after a permanent order is entered, a police officer shall give the notice of the order to the defendant by handing him or her a certified copy of the order. The officer shall indicate that he or she has given notice by writing on plaintiff's copy of the order and the police department's copy of the order, the date and time of giving notice and the officer's name and badge number. The officer shall indicate on the offense report that actual notice has given."
The personal service aspect of the aforementioned statute is reflected in the relevant statute for this matter, G.L. 1956 § 15-15-4.1. Although the requirement of personal service is reflected in the statute, the exceptions as stated in G.L. 1956 § 15-15-4.1(a), apply in the instant matter. G.L. 1956 § 15-15-4.1(f) is one of the noted exceptions. Section (f) provides that "if the defendant is served notice regarding the complaint and hearing, but does not appear at the hearing, the clerk of the Family Court will mail the defendant a copy of the resulting order." G.L. 1956 § 15-15-4.1(f).
The Defendant was provided with a notice and a copy of the TRO issued on July 28, 1999. In addition, the Defendant was served personally by Sheriff Frank J. Rao in regard to the Domestic Abuse Summons and the August 18, 1999, hearing date. State's Exhibit 1C, Full. Subsequent to the hearing in which Master Sammartino extended the TRO, the clerk of the Family Court mailed a copy of the August 18, 1999, extended Order to the Defendant at his last known address in accordance with G.L. 1956 §15-15-4.1(a) and (f), therefore satisfying the requirement of actual notice under Title 15 of the Rhode Island General Laws.
 VIOLATION OF THE ORDER IN WORDS AND ACTS
Additionally, the Defendant contends that the incident on January, 14, 2000, even if proven to be true, does not satisfy the requisite standard of guilt beyond a reasonable doubt to enter a judgment and conviction. The Defendant argues that the behavior exhibited by the Defendant on the date in question does not constitute that which is sufficient to violate sections 1 and 5 of the July, 28, 1999 TRO. The basis of the Defendant's argument is that the final divorce decree between Mrs. Bruneau and the Defendant, entered by the Rhode Island Family Court on November 20, 1999, allowed for the phone calls and visit made by the Defendant. Defendant's Exhibit 1A, Full.
Although the Defendant argues that the divorce decree modified the TRO to allow for the phone calls and visitation, a motion must be made to modify such a TRO by the party desiring to do so. 42 Am. Jur. 2d at § 311; American Electrical Works v. Varley Duplex Magnet Co., 59 A. 110 (R.I. 1904). In the instant matter, a Motion to Modify the TRO was not made by the Defendant. Furthermore, the Defendant's reliance on the divorce decree as modifying or replacing the TRO is misplaced because the divorce decree explicitly states the following: "There is currently in existence a restraining order in Civil Action 99-1176A and that Order is reaffirmed in this domestic action and remains in full force and effect." Defendant's Exhibit A.
In addition to the fact that the divorce decree reaffirmed the TRO, the standard for following such an order requires "prompt compliance" with the Order, and the party bound by the order shall take steps to avoid the occurrence of even the most inadvertent violations. See 42 Am. Jur. 2d at § 315; Smith Barney Inc. v. Hyland, 969 F. Supp. 719 (M.D.Fla. 1997). This is true although the individual in violation of the order incorrectly believed the order to be unenforceable. See 42 Am. Jur. 2d at § 323. The behavior exhibited by the Defendant on January 14, 2000, is a direct violation of the TRO. The TRO is clear in what it requires of the Defendant in sections 1 and 5, and it cannot be said that Defendant's banging and kicking at Mrs. Bruneau's door after being told to reschedule the visit to the next day, as well as exhibiting behavior indicative of alcohol consumption, was in compliance with these requirements when the TRO explicitly states the acts are prohibited. State's Exhibit 1B, Full.
Although the Defendant is correct in stating that Mrs. Bruneau was the only witness able to provide evidence as to the behavior of the Defendant, this Court found Mrs. Bruneau to be a truthful and credible witness. Based on the evidence before it, this Court finds that the acts exhibited by the Defendant on January 14, 2000, were in direct violation of the TRO as issued by the Rhode Island Family Court.
 PRIOR CONVICTIONS
The Defendant's fourth argument contends that the State failed to prove that the Defendant has previously been twice convicted of domestic violence crimes sufficient to convict the Defendant and sentence him according to the enhanced penalties of G.L. 1956 § 12-29-5(d)(2). The Defendant asserts that his prior conviction pursuant to G.L. 1956 §12-29-4 does not qualify as a predicate offense pursuant to G.L. 1956 § 12-29-5(d) and that it is not an offense involving "domestic violence" pursuant to G.L. 1956 § 12-29-2. In addition, the Defendant claims that if this Court finds that G.L. 1956 § 12-29-4 qualifies as a predicate offense under G.L. 1956 § 12-29-2, such a finding would contravene both principles of statutory construction and tenets of constitutional law.
The "Domestic Violence Prevention Act" as implemented by the Rhode Island Legislature was intended to "recognize the importance of domestic violence as a serious crime against society and to assure victims of domestic violence the maximum protection from abuse which the law and those who enforce the law can provide." G.L. 1956 § 12-29-1(a) (2000). This reasoning was reinforced by section (c) of G.L. 1956 §12-29-1 that states the intent of the legislature was to enact a set of legislation that "shall stress the enforcement of the laws to protect the victim and shall communicate the attitude that violent behavior is not excused or tolerated."
Evincing such an intent, the legislature set forth a list of offenses in G.L. 1956 § 12-29-2. Although the list is an extensive one, including eleven specific offenses, it is not exclusive, as evidenced by the fact that the legislature included the language "but is not limited to the following offenses" in section (1) of G.L. 1956 § 12-29-2. By doing so, the legislature allowed for offenses other than those listed to be included under G.L. 1956 § 12-29-2 so that the domestic violence laws could be enforced in accordance with the legislature's intent. Furthermore, the domestic violence crimes as listed in G.L. 1956 §12-29-2 do not include any violations provided for in Title 12. Combining this factor with the strong language and nature of the legislature's intent, as well as the fact that G.L. 1956 § 12-29-4 is explicitly included in the Domestic Violence Prevention Act, indicates that a violation of G.L. 1956 § 12-29-4 was intended to be qualified as a "Domestic Violence Crime." To suggest that a violation of G.L. 1956 § 12-29-4 is not a "Domestic Violence Crime" for purposes of sentencing pursuant to G.L. 1956 § 12-29-5 (c) (2) when it is so included in the Act is contradictory to the intent of the Act.
The Defendant argues that such a broad reading of the statute, especially G.L. 1956 § 12-29-2, would circumvent principles of statutory construction and tenets of constitutional law. A statute is presumed to be constitutional and will be construed as constitutional and valid whenever such a construction is reasonably possible. Kass v. Retirement Board of the Employee's Retirement System, 567 A.2d 358 (R.I. 1989). In Landrigan v. McElroy, the court stated the following; "This Court will not attribute to the Legislature an intent that would result in absurdities or would defeat the underlying purpose of legislation."457 A.2d 1056 (R.I. 1983). The intent and purpose of the legislature in drafting the Domestic Violence Prevention Act is indicated in G.L. 1956 § 12-29-1, et seq. Accordingly, such a construction of the statute to include additional offenses, especially those enumerated in the Domestic Violence Prevention Act, complies with the clearly evinced intent of the legislature. Such a construction is thus reasonably possible and constitutional.
 CONCLUSION
After a complete and independent review of the entire record, this Court finds that the Defendant's Motion to Dismiss should be denied with judgment entered against the Defendant. The TRO, as extended by Master Sammartino on August 18, 1999, was valid and enforceable on January 14, 2000, and all notice provisions were fully complied with in accordance with G.L. 1956 § 15-15-4.1(a) and (f). In addition, the behavior and actions exhibited by the Defendant on January 14, 2000, at the residence of Mrs. Bruneau, constituted a violation of the TRO, as they clearly violated the language of sections 1 and 5. Finally, this Court finds that the intent of the legislature in enacting the statute was clear, as well as constitutional. Accordingly, the Defendant's Motion to Dismiss is denied, and judgment must enter against the Defendant.