[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter is before the Court on Defendants' motion to vacate a Consent Judgment. The Consent Judgment was signed by counsel for the Plaintiff, and by the Johnston Town Solicitor on behalf of the municipal defendants, and the Court entered the Judgment on September 4, 1996.
 I. FACTS AND TRAVEL
The circumstances giving rise to the entry of the Consent Judgment are in all material respects undisputed. From June 1976 until March 1985, Plaintiff David C. Tocco (hereinafter "Plaintiff" or "Tocco") was employed full time as an officer in the Police Department of the Town of Johnston. Commencing in March 1985, Tocco ceased his work for the Town and began receiving a disability pension at the rate of fifty percent (50%) of his salary and benefits in accordance with special legislation enacted by the Town. On November 30, 1995, the Rhode Island Supreme Court decided the case of Chester v. aRusso, 667 A.2d 519 (R.I. 1995). In that decision, which also arose from claims relating to police officers who became disabled during the course of their employment, the Court held that the Collective Bargaining Agreement prevailed over less generous benefits provided in the Town's special legislation. The plaintiff officers were found to be entitled to one hundred (100%) percent of their previous salaries in accordance with the provisions of G.L. 1956 §45-19-1(a).
In reliance on the Chester decision, Plaintiff, through counsel, made a demand that the Town recompute the amount of the Plaintiff's disability pension and pay to the Plaintiff an amount of approximately $339,000, together with interest, to compensate the Plaintiff for what was alleged to be the difference between the amount of the pension which he in fact received, and the amount he should have received had the pension been calculated in accordance with § 45-19-1 and the governing Collective Bargaining Agreement. When the Town failed to meet the demand, the Plaintiff initiated this suit on February 29, 1996.
In May, 1996, Plaintiff moved for summary judgment, and requested that judgment enter in his favor in the amount of $339,095.77, together with interest and costs. Prior to hearing and determination of the summary judgment motion, the parties reached a compromise settlement and incorporated the terms of that settlement into the subject Consent Judgment, which was presented to the Court and entered on September 4, 1996. The Judgment provided for a monetary settlement of $200,000 for the amounts allegedly due from the inception of the disability pension to September 1, 1996, and prospective relief in the form of future payments reflective of full salary and benefits applicable to the Plaintiff's rank pursuant to the Collective Bargaining Agreement in effect at the time of his retirement. The Judgment was consented to on behalf of the Town's Mayor and Finance Director by the Johnston Town Solicitor.
Plaintiff was told that payments were initially delayed because the Town Solicitor sought approval of the Town Council. However, by letter faxed to Plaintiff's counsel on October 11, 1996, the Town Solicitor assured the Plaintiff that the Johnston Town Council "has heard all the pertinent facts concerning the ratification of the settlement" as it pertained to Mr. Tocco; that "ratification is a precautionary step;" and that the Town would pay in accordance with the Judgment, together with additional interest and an additional $1,000 "to offset any further legal fees necessitated by any delay until the ratification in November." None of the parties has put forward evidence that the Town Council expressly ratified the settlement executed by the Town Solicitor. However, there is no dispute that at a Town Council meeting on October 17, 1997, a discussion ensued relative to financing the costs of various outstanding judgments as set forth on a document entitled "revised bond anticipation note spreadsheet." That spreadsheet referenced the Tocco judgment. That meeting reconvened on October 27, 1997, at which time Amended and Restated Ordinance No. 1012 was passed, authorizing the issuance of bonds for the financing of various appropriations including, inter alia, the sum of $5,030,348 "for the purposes of financing judgments and settlements pending against the Town and financing capital purchases, improvements, and infrastructure needs of the Town." Thereafter, the Town paid to Plaintiff the lump sum called for in Paragraph 1 of the Consent Judgment, and the monthly amounts for prospective salary and benefits provided in Paragraph 2 of the Consent Judgment.[1] Those payments were made to the Plaintiff monthly for nearly seven years, until the present dispute arose sometime between February 2003, and the filing of the instant Motion to Vacate Judgment in October 2003.[2]
In June, 2001, the Supreme Court decided the case of Webster v.Perrota, 774 A.2d 68 (R.I. 2001). In Webster the Supreme Court distinguished its previous holding in Chester, indicating that in its earlier decision,
 "We held that when there exists a `valid and enforceable collective bargaining agreement, whose terms provide greater disability benefits than is afforded by the special legislation,' . . . the provision of the collective bargaining agreement takes precedence over the special act. We were not called upon to decide, and indeed never addressed, the meaning of these provisions or their applicability to long-retired officers." Webster, 774 A.2d at 81-82.
The Court went on to characterize the Chester case as "a decision involving accepted principles of statutory construction in which our task was to effectuate the intent of the Legislature. . . . It has no bearing on the plaintiff's entitlement to damages. To the extent that Chester
holds otherwise, we specifically overrule it." Id. at 82.
 II. ANALYSIS
On the basis of the above chronology of events, the Town argues in a 2003 Motion to Vacate that this Court vacate the 1997 Consent Judgment, in that the provisions of the Consent Judgment are inconsistent with the Supreme Court's 2001 holding in Webster. In addition, under the Supreme Court's holding in Casa DiMario, Inc. v. Richardson, 763 A.2d 607 (R.I. 2000), the Town argues that the Town Solicitor lacked authority to bind the Town to the Consent Judgment, giving rise to an additional ground to vacate.
Rule 60(b) of the Superior Court Rules of Civil Procedure provides:
 "(b) Mistake; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court. . . ." Super. Ct. R. Civ. P. Rule 60(b).
The moving party bears the "burden of convincing the trial court that legally sufficient grounds, as specified under Rule 60(b), existed to warrant vacating the judgment." DeFusco v. Giorgio, 440 A.2d 727, 730
(R.I. 1982); see Frias v. Muratore, 740 A.2d 340, 342 (R.I. 1999). Regarding relief from a consent judgment, the burden is particularly heavy. The Rhode Island Supreme Court has "long recognized the sanctity of final judgments entered by the various courts in this state and, in particular, consent judgments. . . . [A]bsent fraud, mutual mistake, or actual absence of consent, a judgment entered by consent cannot be [set aside]. . . ." Mansolillo v. Employee Ret. Bd. of Providence, 668 A.2d 313,316 (R.I. 1995). Our Supreme Court has noted that "`[a]lthough a consent judgment receives a court's imprimatur, the judgment is in essence a contract between the parties to the litigation'. . . ." In re McBurneyLaw Service, Inc., 798 A.2d 877, 882 (R.I. 2002) (quoting Trahan v.Trahan, 455 A.2d 1307, 1310 (R.I. 1983)).
 A. Rule 60(b)(4)
Initially, the Town suggests that the judgment is void under Rule 60(b)(4). "[R]elief is available under Rule 60(b)(4) only when the Court entering the judgment lacked jurisdiction, or the court's actions amounted to a `plain usurpation of power constituting a violation of due process.'" Labossiere v. Bernstein, 810 A.2d 210, 215 (R.I. 2002) (quotingAllstate Ins. Co. v. Lombardi, 773 A.2d 864, 869 (R.I. 2001)); Hoult v.Hoult, 57 F.3d 1, 6 (1st Cir. 1995). There appear to be no facts to suggest that the Superior Court, when asked to enter the judgment to which the parties had agreed, in any way lacked jurisdiction, or otherwise acted contrary to due process. The Town argues that the alleged absence of actual authority of the Town Solicitor to enter into the Consent Judgment renders the judgment void. The Casa DiMario case does not hold that a judgment consented to by the Town Solicitor is void under Rule 60(b)(4), but rather holds that under the facts of that case, the judgment was subject to being vacated pursuant to Rule 60(b)(6). CasaDiMario, 763 A.2d at 611-12 (citing Richardson v. Smith, 691 A.2d 543,546 (R.I. 1997) (listing "lack of actual consent" to an order as an "extraordinary circumstance" that could be relied on by a trial justice to vacate an order under Super. R. Civ. P. 60(b))).
The Town further argues that the judgment is rendered void in that the judicial precedent underlying the Town's willingness to consent to judgment in 1996 was vitiated by the subsequent decision of the Rhode Island Supreme Court in Webster. Overruled precedent, however, does not render void an earlier judgment entered by consent. "[A] judgment is not void and is therefore not within the ambit of 60(b)(4) simply because it is erroneous, or is based upon precedent which is later deemed incorrect or unconstitutional." Marshall v. Bd. of Educ., 575 F.2d 417, 422 (3d Cir. 1978). A change in case law pending at the time of the entry of a final judgment does not render the judgment void. Lubben v. SelectiveService, 453 F.2d 645, 648 (1st Cir. 1972); see also 11 Wright, Miller Kane, Federal Practice Procedure, § 2862 at 326 (1965).
 B. Rule 60(b)(5)
Under the circumstances presented, the subsequent decision in Webster
should not serve as grounds to vacate the judgment under Rule 60(b)(5). That clause permits the Court to vacate a prior judgment, even one entered by consent, if it is "no longer equitable that the judgment should have prospective application."[3] Counsel for the Plaintiff has aptly analyzed the line of federal case law dealing with when the reversal of earlier precedent might rise to the level of "inequity" supporting grounds for vacating a consent judgment. Under certain circumstances Rule 60(b)(5) may be used to vacate the prospective application of injunctive relief imposed by consent judgment based upon a change in decisional law. See Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367 (1992).
The Rufo line of cases clearly speaks to situations involving the continuing viability of prospective injunctive relief as it pertains to institutional reform litigation. This case, on the other hand, is in the nature of a monetary settlement of a disputed disability pension claim, and thus more related to the burden faced when attempting to vacate a consent judgment in private commercial litigation.[4] Although admittedly public funds are at issue herein, and at least a portion of the settlement remains prospective and executory, this Court may vacate a consent judgment only if the defendant establishes that to do otherwise would lead to an inequitable result. In this case, the municipal defendants have failed to meet that standard.
In the circumstances of this case, the Court must be sensitive to the Plaintiff, who, in reliance on the 1997 settlement, structured his financial expectations on a future stream of income from the disability pension negotiated with the Town. The Plaintiff had made a much larger demand in 1996, which demand was compromised down to the settlement figures reflected in the Consent Judgment.[5] Indeed a dispute over whether Mr. Tocco voluntarily or involuntarily retired from the police force (an issue that appears to remain contested even today), may have played a role in the decision by the Town to accept the settlement by consent.[6] It did so rather than risk the possibility of a larger or more onerous monetary judgment being entered by the Court if the summary judgment motion pending at the time of the settlement had been granted.
Parties represented by counsel often must make decisions on whether to settle or not based upon predictions as to how the law might develop during the pendency of the payout of the settlement. This Court will not condone the Town's efforts to modify the terms of a partially executed monetary settlement simply because the law developed in a way not anticipated at the time the settlement was made. To do so would surely send the wrong message to litigants desirous of obtaining the finality of settlement rather than risk the uncertainties of litigation. This Court should not exercise its discretion under of Rule 60(b) to allow a party, even a municipal entity, to cure a legal miscalculation that led to a settlement.[7]
 C. Rule 60(b)(6)
Finally, the provision of Rule 60(b)(6) should not afford the Town relief not otherwise available under the preceding sections of Rule 60(b). This section of the rule was not intended to constitute a "catchall," and a party seeking to vacate a judgment thereunder must show extraordinary circumstances. Bailey v. Algonquin Gas Transmission Co.,788 A.2d 478, 482-83 (R.I. 2002). Once again, the Town suggests that the lack of actual consent should be deemed "extraordinary circumstances" for vacating the judgment under Rule 60(b)(6) and the holding in CasaDiMario.
However, unlike the facts presented in Casa DiMario, the Town of Johnston herein acted over a period of seven years in a manner that evidences the ratification of the Judgment. Such actions included the actual approval of a bond issue to fund the settlement, as well as monthly payments to the Plaintiff authorized by the Town Council as part of the annual budget process. Whereas, the Town Council in Casa DiMario
voted unanimously to reject the settlement within weeks of the Town Solicitor's entry of the Judgment, the Town Council in this situation acted entirely consistent with the Consent Judgment for seven years, and paid Plaintiff thereunder.[8]
Based on the previous analysis, neither the alleged absence of actual consent, nor the Supreme Court's legal analysis in Webster, constitutes such extraordinary circumstances as to justify the Town being relieved of its remaining obligations to Mr. Tocco under the Consent Judgment.
 III. CONCLUSION
The Defendants' Motion to Vacate the Consent Judgment is denied. The parties shall present an Order to the Court to that effect.
[1] The Town has attached to its Motion the affidavit and supplemental affidavit of Robin Pimental, the current Town Clerk, who indicates that a search of the Town's records do not reveal records of any proceedings or decisions authorizing the entry of the Consent Judgment, ratifying its terms, or "pertaining to David C. Tocco, his disability pension, payments made to him or claims made by him for increased payments." However, neither the Town Clerk nor any other representative of the Town has taken issue with the documents attached to the Plaintiff's opposition which identifies the Town's approval of bond financing to fund the Tocco judgment, or the fact that monthly payments were made by the Town in furtherance of the Town's obligations under the Consent Judgment.
[2] Defendants' Answer to Interrogatories, number 3, dated April 23, 2004, states as follows:
 "David C. Tocco has been paid on a monthly basis from the Police Department pension account from August 1996 to the present. See Earnings Statement for David C. Tocco produced in response to Plaintiff's Second Request for Production of Documents for the period from January 2000 through December 2003. Documentation for the time period from August 1996 through December 1999 is no longer available.
 Payments to David C. Tocco were made from the Police Department pension account and were authorized as pension payments by the Town Council as part of the annual budget process.
 In addition, David C. Tocco received payment in the amount of $205,588.00 with a check dated January 6, 1997 made out to David C. Tocco and Rodio Brown, Ltd. which was drawn from the General Fund."
[3] Rule 60(b)(5), like its federal counterpart, also permits vacating a judgment "where a prior judgment upon which it is based has been reversed or otherwise vacated." As a leading commentator notes, "This ground is limited to cases in which the present judgment is based on the prior judgment in the sense of claim or issue preclusion. It does not apply merely because a case relied on by the court as precedent in rendering the present judgment has since been reversed." 11 Wright, Miller Kane, Federal Practice Procedure, § 2863 at 335 (1995). Seealso Coalition of Black Leadership v. Cianci, 570 F.2d 12 (1st Cir. 1978).
[4] "[I]n considering whether a decree arising out of commercial litigation between two private parties should be modified, a court should look to such factors as the circumstances leading to the decree . . ., the quantum of hardship on the burdened party, the duration of the burden thus far and the prospect of its continuing, and the benefited party's need for a continuation of the decree." Alexis Lichine Cie. v. SachaA. Lichine Estate Selections, Ltd., 45 F.3d 582, 586 (1st Cir. 1995).
[5] Similarly, in In re McBurney Law Services, Inc., the fact that the parties "compromised their original positions relative (to a written stipulation]" which the Court analogized to a consent judgment, was a noteworthty fact for precluding its being set aside. 798 A.2d at 882.
[6] The case of Brissette v. Potter, 560 A.2d 324 (R.I. 1989), decided prior to the 1996 Consent Judgment, dealt with police officers who were involuntarily retired while out on injured on duty (IOD) status, as opposed to officers who voluntarily retired and accepted disability pensions.
[7] Relative to balancing the equities, the municipal defendants have not presented to the Court any evidence of the amount of harm or monetary loss the Town would suffer if the Consent Judgment remains in effect, and is neither modified nor vacated.
[8] Even if grounds to vacate existed under Rule 60(b)(5) or Rule 60(b)(6), the motion must be made within a "reasonable time." The Town has failed to address why its filing of a motion to vacate the Consent Judgment was not made until some three years after the Casa DiMario
decision, and two and one-half years after the Webster decision.