### State *vs.* George T. Davis.

A statute provided that "Every person not standing in the relation of husband or wife, parent or grand parent, child or grand child, brother or sister, by consanguinity or affinity to another who shall have committed any offence or been accessory before the fact to the commission of any offence, who shall be convicted of knowingly harboring or relieving such other person, with intent that he shall escape or avoid detection, arrest, trial, or punishment, shall be imprisoned." . . .

*Held,* that to constitute a violation of this statute the person harboring or relieving must know that such other person has committed an offence and must intend to shield such other person from the law.

The history of this statute traced and the word "knowingly" in it defined.

An indictment was brought under this statute without charging the defendant with knowledge that the person harbored and relieved had committed the crime alleged.

*Held,* that the indictment was bad.

EXCEPTIONS to the Court of Common Pleas.

*Providence, November* 21, 1883. DURFEE, C. J. This is an indictment for the violation of Pub. Stat. R. I. cap. 247, § 3, which reads as follows, to wit: "Every person not standing in the relation of husband or wife, parent or grand parent, child or grand child, brother or sister, by consanguinity or affinity to another who shall have committed any offence or been accessory before the fact to the commission of any offence, who shall be convicted of knowingly harboring or relieving such other person, with intent that he shall escape or avoid detection, arrest, trial, or punishment, shall be imprisoned not exceeding five years or be fined not exceeding one thousand dollars." In the indictment, found in the Court of Common Pleas, the offence was charged in manner following, to wit: That at Newport, on the 15th day of March, 1883, the defendants "did then and there knowingly harbor and relieve

another, to wit : one George H. Rounds, with the intent that he the said Rounds should then and there avoid detection, arrest, trial, and punishment, he the said George H. Rounds having then and there committed an offence, to wit : the offence of entering a dwelling house in the daytime, with intent to commit larceny therein, the said Thomas T. Davis and the said George T. Davis and the said Patrick White not then and there standing in the relation of husband or wife, parent or grand parent, child or grand child, brother or sister, by consanguinity or affinity to the said George H. Rounds." The defendants moved the court below to quash the indictment for insufficiency, and the court overruled the motion. The defendant excepted, and now, after verdict of guilty against George T. Davis, he brings the cause to this court for revision.

The defendant contends that the indictment is defective in that it does not allege that the defendants harbored and relieved Rounds knowing that he had committed the crime which he is alleged to have committed, such knowledge being a necessary ingredient of the offence under the statute. If the knowledge be a necessary ingredient, we think the knowledge should have been alleged with certainty, and that the indictment is bad for want of the allegation.

The attorney general contends that the knowledge is not necessary, because, if it be necessary, a person may harbor or relieve another with impunity, so long as he is ignorant of the particular offence which the other has committed, though he knows perfectly well that he has committed an offence and is fleeing from arrest, and though his purpose in harboring or relieving him is to aid his escape. If the knowledge be necessary, argues the attorney general, he may safely harbor and hide a convict fleeing from prison in his prison garb, with the officers of the law in hot pursuit, if only he be ignorant of the particular offence which the fugitive has committed. The argument against the construction contended for by the defendant is certainly very cogent. But on the other hand if the statute is not to be so construed, the word " knowingly " in the statute is superfluous, having no meaning which is not necessarily implied without it. Moreover, if the statute is not to be so construed, a person who harbors another,

knowing that he has committed some petty misdemeanor, and simply, intending to help him escape arrest for it, may be convicted under an indictment in which the principal offence alleged is murder or some other heinous crime, knowing of which he would have recoiled from harboring the criminal.

These are views which strike the mind on simply reading the statute without reference to its history or antecedents. We think, however, that the statute cannot be fairly construed without reverting to the common law offence which was superseded by it, and tracing the statute to its present form. Evidently the statutory offence was intended to take the place of the common law offence of being an accessory after the fact. At common law an accessory after the fact is one who, knowing a felony has been committed by another, receives, relieves, comforts, or assists the felon. "To constitute an accessory after the fact," it is said, " three things are requisite : the felony must be completed ; he must know that the felon is guilty : and he must receive, relieve, comfort, or assist him." 1 Archbold Crim. Prac. & Plead. 8th ed. *17, *n.* 2. These being requisites of the offence, it was of course necessary to allege them in the indictment ; and so are the forms or precedents. Ib. 75, 76. By the old common law the principal and the accessory were liable to the same punishment, and no man could be tried as accessory after the fact till after the principal felon was convicted. We do not find any statute of the State changing this common law until A. D. 1798. Section 20 of "An act to reform the penal laws," contained in the Digest of 1798, provides "That every person who shall knowingly receive, harbor, conceal, maintain, assist, or relieve any person or persons who have committed any of the crimes aforesaid, or hereafter mentioned, although the principal offender cannot be taken so as to be prosecuted, is and shall be considered an accessory after the fact, and shall be fined not exceeding five hundred dollars, and be imprisoned not exceeding two years." The section seems to have been intended to change the common law in three particulars, namely : *first,* to make it extend to the harboring of others besides felons ; *second,* to mitigate or limit the punishment ; and *third,* to make the accessory liable to trial and punishment, "although the principal offender cannot be taken so as to be prosecuted." We

see no reason to think that any other change was contemplated. The offender is denominated an accessory after the fact. The offence, therefore, subject to the alterations effected by the statute, ought to be deemed to have the character of the common law offence. If so, then knowledge on the part of the accessory, not only that the principal offence had been committed, but also that the person harbored had committed it, was a necessary ingredient in the accessory offence. We think there can be no doubt that the word " knowingly," as used in the section, was intended to have that meaning. The section was reënacted without change in the Digest of 1822. In the Digest of 1844 the section was altered, and it appeared there, as it has appeared in all later revisions, in its present form. The section in its present form increases the punishment, but in another respect it mitigates the severity of the law. Previously any person, except a wife, however closely related to the criminal, exposed himself to punishment as an accessory after the fact by knowingly harboring him. The section in its present form exempts from its operation the husband or wife of the principal offender, and certain others nearly related to him. It also expresses what was probably before implied, that the guilt is incurred only when there is an intent to shield the principal offender from the law. These are the only alterations worthy of note which are apparent. Now the question is whether by reason of these alterations, the word " knowingly " has acquired a different meaning from what it previously had. It seems to us that we must assume that the old word has the old meaning until it is clearly apparent that it was meant to have another. We do not find any sufficient indication that a different meaning was intended. The legislature has been very explicit in the changes above noted, and we cannot suppose, if so essential a change in the character of the offence, as that which the attorney general contends for, had been intended, that the legislature would have left it so completely to inference or conjecture. We think, therefore, that the indictment is bad in that it does not allege with the certainty required by the rules of criminal pleading the offence which, as we construe the statute, was intended to be punished by it.          *Exceptions sustained and indictment quashed.*

*Samuel P. Colt,* Attorney General, for plaintiff.

*Charles E. Gorman & Patrick J. Galvin,* for defendant.