**STATE**

v.

**Gregory ACCIARDO.**

No. 98–429–C.A.

Supreme Court of Rhode Island.

March 16, 2000.

Annie Goldberg, Aaron L. Weisman, Providence, for Plaintiff.

David N. Cicilline, Bristol, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## O P I N I O N

WEISBERGER, Chief Justice.

This case comes before us on the appeal of Gregory Acciardo (defendant or Acciardo) from a judgment of conviction entered in the Superior Court on two counts of harboring Michael Rossi (Rossi) and Louis Marchetti (Marchetti), both of whom had been clients of the defendant on previous occasions involving criminal charges. We reverse the conviction. The facts and travel of the case are as follows.

The defendant was at the time of the alleged offenses a member of the bar of this state who was actively engaged in the practice of law, including the area of criminal defense. In addition to his relationship with Rossi and Marchetti as an attorney, defendant also maintained a social relationship with Rossi. He was generally aware that both Rossi and Marchetti had over a period of time engaged in various criminal activities.

On Friday, March 1, 1996, Rossi and Marchetti came to defendant's home and informed him that a former associate named Richard Hartley (Hartley), with whom they had cooperated in previous criminal ventures, had left the Adult Correctional Institutions and was currently detained at the headquarters of the state police. They indicated their belief that Hartley would for his own advantage implicate them in a number of criminal offenses. Rossi and Marchetti asked defendant to advise them about a course of conduct in the event that Hartley should accuse them of criminal complicity with him.

The defendant attempted to investigate the situation on behalf of his clients by telephoning Hartley's family to determine his whereabouts and also by telephoning the state police to determine whether there was a warrant outstanding for either of his clients. Acciardo succeeded in contacting Detective Steven O'Donnell, and asked him whether a warrant had been issued for either Rossi or Marchetti. It is important to note that although warrants had been issued for both Rossi and Marchetti relating to a recent burglary in the Town of Bristol, Detective O'Donnell falsely asserted to Acciardo that no felony warrants were outstanding for either of those individuals. He did say that a misdemeanor warrant was outstanding against Marchetti for eluding the Cranston police. Acciardo later found that this last statement was untrue and that there was no warrant outstanding as a result of a Cranston police charge for any misdemeanor. It is undisputed that O'Donnell and other members of the state police had decided to conceal from Acciardo that felony warrants existed for Rossi and Marchetti. In fact, they did not log the existence of these warrants with the national computer data bank (NCIC), with which outstanding felony warrants generally are listed in order to aid in the apprehension of fugitives. It is also undisputed that O'Donnell did not disclose to Acciardo that the state police had probable cause to arrest either Rossi or Marchetti without a warrant.

Armed only with this erroneous information, Acciardo decided to transport his clients to an apartment normally occupied by his mother-in-law, who was temporarily out of state. He provided his clients with food, beer, and a cellular phone listed to Acciardo's wife. He also arranged for a visit by Rossi's girlfriend to the apartment. It appears that Rossi and Marchetti were transported to this apartment in Acciardo's automobile. Rossi and Marchetti had moved their cars into garages owned by defendant and defendant's parents. Rossi and Marchetti remained at this apartment

provided by Acciardo for the rest of Friday, March 1, 1996, and all of the next day, Saturday, March 2, 1996. The defendant brought Rossi's girlfriend to visit him at the apartment.

On Sunday, March 3, Acciardo learned that the state police were actively seeking Rossi at his home. This information came from a friend of Rossi named Albert Verecchia, who had gone to Rossi's home to plow the snow from the driveway. It is not clear whether Acciardo became aware at this time that the state police had warrants for Rossi and Marchetti or were seeking to arrest them without warrants based on probable cause. In any event, Acciardo counseled Rossi to surrender to the police. He also apparently gave similar advice to Marchetti. On Sunday, Rossi turned himself in at the Johnston police barracks. The next day (Monday) Marchetti surrendered to the police. Apparently Rossi gave incriminating statements to the state police concerning Acciardo, including information that Acciardo had participated in and/or aided and abetted in the commission of past crimes with Rossi.

Acciardo was indicted for aiding and abetting in the commission of a burglary, aiding and abetting in the crime of breaking and entering, subornation of perjury, and also was charged with two separate offenses of harboring Rossi and Marchetti. After a jury trial, defendant was acquitted of all charges, except the two counts of harboring Rossi and Marchetti. In support of his appeal, defendant has raised several issues. The most significant issue was the denial of his motion for judgment of acquittal.

### Motion For Judgment of Acquittal

At the close of the state's evidence, defendant moved for judgment of acquittal on the ground that the state had failed to prove essential elements of the statutory

crime of harboring. That crime is set forth and defined in G.L.1956 § 11–1–4 as follows:

"Every person not standing in the relation of husband or wife, parent or grandparent, child or grandchild, or brother or sister, by consanguinity or affinity, to another who shall have committed any offense or been accessory before the fact to the commission of any offense, who shall be convicted of *knowingly harboring or relieving the offender, with intent that he or she shall escape or avoid detection, arrest, trial, or punishment,* shall be imprisoned not exceeding five (5) years or be fined not exceeding one thousand dollars ($1,000)." (Emphasis added.)

This statute was construed many years ago in *State v. Davis,* 14 R.I. 281 (1883). In that case, the Court held that "guilt is incurred only when there is an intent to shield the principal offender from the law" and that the term "knowingly" connotes that the harborer must have knowledge of the particular offense with which the principal offender has been charged. *Id.* at 284. *Davis* was concerned with the allegations in the indictment as opposed to the proof in support thereof.[1]

Applying that connotation to the statute in its present form, we are of the opinion that the state must prove that defendant in this case knew that Rossi and Marchetti had committed a particular crime and were subject to arrest therefor, either with a warrant or based upon probable cause without a warrant. The misrepresentations made by a member of the state police completely negated the possibility of knowledge on the part of Acciardo that the arrest of his clients for a felony offense committed in Bristol or elsewhere was imminent based upon an outstanding warrant or upon probable cause.

---

1. The case of *State v. Davis,* 14 R.I. 281 (1883) dealt with allegations necessary to state an offense in an indictment. We reserve judgment concerning whether this case would now be of controlling effect on the issue of whether one accused of harboring must know the specific elements of the formal charge.

■ The conscious decision on the part of the state police to misrepresent to Acciardo the fact of the existence of warrants and to conceal the existence of probable cause completely negated as a matter of law the element of his knowingly shielding his clients from arrest. The defendant's information that he may have received from his clients was privileged. *See generally Defusco v. Giorgio,* 440 A.2d 727, 731 (R.I.1982) (discussing attorney-client privilege); *State v. Driscoll,* 116 R.I. 749, 756–57, 360 A.2d 857, 861 (1976) (same); *Williams v. Rhode Island Hospital Trust Co.,* 88 R.I. 23, 47–48, 143 A.2d 324, 337–38 (1958) (same). He had no obligation to advise his clients to surrender themselves to the police or to inform the police of their whereabouts until he knew that there was a sound legal basis for their arrest for a specific offense. The police have no roving commission to apprehend individuals without either a warrant or probable cause. *See Mallory v. United States,* 354 U.S. 449, 456, 77 S.Ct. 1356, 1360, 1 L.Ed.2d 1479, 1484 (1957) wherein Justice Frankfurter observed: "Presumably, whomever the police arrest they must arrest on 'probable cause.' It is not the function of the police to arrest, as it were, at large and to use an interrogating process at police headquarters in order to determine whom they should charge before a committing magistrate on 'probable cause.' "

In the circumstances of this case the state's evidence failed to establish the essential scienter element of the crime. It is undisputed that the information given to Acciardo negated the existence of warrants and did not purport to assert probable cause for arrest. In the absence of these elements, the crime of harboring had not been established. Therefore, the trial justice erred in declining to grant defendant's motion for judgment of acquittal made by counsel for defendant at the close of the state's evidence.

### Conclusion

The defendant has raised a number of other issues, including the alleged improper admission of evidence forbidden by Rule 404(b) of the Rhode Island Rules of Evidence, which precludes the admission of evidence of prior bad acts or crimes, with certain specific exceptions. Although we are inclined to agree that the state was permitted to go too far with the admission of such evidence, analysis of this issue is unnecessary in light of our determination on the motion for judgment of acquittal. Similarly other issues raised by the defendant need not be reached.

For the reasons stated, the defendant's appeal is sustained. The judgment of conviction is reversed, and the papers in the case may be remanded to the Superior Court with directions to enter a judgment of acquittal in respect to both charges of harboring.