STATE

v.

John SIVO.

No. 2001–178–C.A.

Supreme Court of Rhode Island.

Nov. 15, 2002.

Virginia M. McGinn and Aaron L. Weisman, Providence, for Plaintiff.

John F. Cicilline, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

The defendant, John Sivo (Sivo or defendant), is a former law enforcement officer,

having served with the Cranston Police Department as a patrolman for eleven years. In 1972, at the start of that career, Sivo undertook a solemn oath to uphold the law. On March 30, 1999, a jury convicted Sivo of the crime of perjury and he subsequently was sentenced to ten years at the Adult Correctional Institutions, five years to serve, the remainder suspended with probation. Sivo's conviction is yet another installment of the long-running chronicle of the infamous "Golden Nugget" prosecution.[1]

This case came before the Supreme Court for oral argument on September 30, 2002, pursuant to Sivo's appeal from a judgment of conviction for perjury. The defendant argues that a misinterpretation of the perjury statute resulted in several instances of reversible error. The defendant also assigns error to the jury instructions given at trial and to various evidentiary rulings made by the trial justice. We deny and dismiss the appeal and affirm the conviction.

## Facts and Travel

The following facts are not in dispute. On the evening of August 4, 1995, Richard Hartley, Anthony Meo, Louis Marchetti, and Michael Rossi burglarized three homes in Bristol, Rhode Island. Their participation in these crimes remained unsubstantiated until March 1, 1996, when Hartley signed a cooperation agreement with the Rhode Island State Police and implicated himself and his confederates in this criminal enterprise. On the same day, fearful of what Hartley may have disclosed to the police, Rossi and Marchetti contacted their attorney and hid out in Johnston in an uninhabited apartment, to, *inter alia,* develop alibis and discuss strategies to defend themselves if necessary.[2]

The defendant became involved on March 1, 1996, when his daughter, then engaged to Marchetti, came to his place of business seeking solace and advice on what could be done to keep Marchetti out of prison. The following day, defendant accompanied his daughter to the apartment where Marchetti and Rossi were hiding out. At trial, Sivo acknowledged speaking with Marchetti and recognized that Marchetti was agitated and concerned over possible problems with the police for "things" he had done wrong. Sivo denied suspecting that Marchetti was involved in any criminal activity.

At Marchetti's Superior Court bail and probation violation hearing on July 23, 1996, Sivo testified that on the night of the Bristol burglaries, Marchetti was present at a summer home Sivo had rented in Narragansett. Sivo strengthened this alibi by testifying that Marchetti "definitely" was there that evening and "absolutely" did not leave at any time during the night. He explained that he remembered that date well because the gathering celebrated several family birthdays and the date coincided with his parents' anniversary.

---

1. The Golden Nugget gang was a consortium of individuals engaged in a wide-ranging criminal enterprise involving burglary, robbery, and other crimes. The group received its name from the Golden Nugget Pawn Shop in Providence, Rhode Island, where members of the group sold their stolen loot. *See State v. Martinez,* 774 A.2d 15 (R.I.2001); *State v. Verrecchia,* 766 A.2d 377 (R.I.2001); *State v. Acciardo,* 748 A.2d 811 (R.I.2000). The state charged Sivo with perjury as part of a 722– count indictment that implicated forty-five individuals.

2. This apartment was owned by the mother-in-law of their attorney, Gregory Acciardo. Acciardo later was convicted of harboring Rossi and Marchetti; however this Court overturned the conviction on appeal. *See State v. Acciardo,* 748 A.2d 811 (R.I.2000).

Months later, Rossi began cooperating with the police and disclosed that Sivo fabricated Marchetti's alibi and then lied about Marchetti's whereabouts when he testified at the hearing. At Sivo's subsequent perjury trial, Rossi testified to the discussion between Sivo and Marchetti at the hideout apartment just before Marchetti surrendered to police. Rossi testified:

"I don't know at what point he actually said that he would say [Marchetti] was with him. I know there was discussion that we'd have to, you know, we were going back several months and we'd have to actually find out where we all were at that time and we were going to some house. [Sivo] was going to try to work [Marchetti] into wherever he was."

The other cooperating witness, Hartley, testified that Marchetti was involved in the Bristol burglaries on the night of August 4, 1995, thereby further contradicting Sivo's hearing testimony.

At trial, Sivo defended his conduct, explaining that the discrepancy was inadvertent and attributable to mistake. He claimed he relied on real estate records for the date of the beach house rental and had spoken with his daughter and wife, both of whom agreed that Marchetti had been in Narragansett on August 4, 1995. Sivo explained that it was only after the police arrested him in July 1996 for the crime of perjury that he found out for the first time that Marchetti had not been at the beach house that night. Notwithstanding, the jury returned a guilty verdict, and the trial justice denied Sivo's motion for a new trial.

Sivo raises several issues on appeal: (1) whether the indictment properly charged him with perjury; (2) whether the trial justice properly admitted into evidence a hearsay statement from the witness, Michael Rossi; (3) whether the state improperly cross-examined Sivo concerning his knowledge of the definition of the crime of perjury; (4) whether the court erred in denying Sivo's request for a cooperating-witness charge; (5) whether the trial justice properly denied Sivo's motion to dismiss as well as his motion for judgment of acquittal based on G.L.1956 § 11–33–1(c); and finally, (6) whether the court properly denied Sivo's request for a supplemental jury instruction concerning the legal definition of perjury.

## I

## Interpretation of the Perjury Statute

### A. Sufficiency of the Indictment

■ Three of Sivo's issues on appeal focus on the interpretation of Rhode Island's perjury statute, § 11–33–1. The defendant argues that the indictment is "constitutionally inadequate and could not be cured by a bill of particulars."

Count 658 of the indictment states that in March of 1996:

"John Sivo * * * did commit the crime of perjury by falsely, knowingly, maliciously, willfully and corruptly testifying under oath before the Providence Superior Court to a material fact, to wit the whereabouts of Louis Marchetti on the evening of August 4, 1995, in violation of § 11–33–1 and § 11–33–2 * * *."

Sivo argues that the crime of perjury has four elements: (1) that the accused testified under oath; (2) and knowingly made a false declaration; (3) about a material fact; and (4) knowing it was false when he or she uttered the statement. Sivo asserts that the indictment is insufficient since it fails to allege that, at the time he made the statement, he knew it to be false.

The pertinent portion of the statute, § 11–33–1(a), provides:

"Every person under oath or affirmation who *knowingly* makes any false material declaration *or* makes or uses any other information, including any book, paper, document, record, recording, or other material, *knowing* it to contain any false material declaration, shall be deemed guilty of perjury." (Emphases added.)

Contrary to Sivo's contention, the state argues that the language "knowing it to contain any false material declaration * * *" applies only to nontestimonial evidence, "including any book, paper, document, record, recording, or other material, knowing it to contain any false material declaration." Therefore, the state maintains, one who knowingly makes a false material declaration under oath as well as a person who makes use of a false document, knowing the document is false, is guilty of the crime of perjury. Thus, the crime of perjury can occur by one or both alternative means; but each requires actual knowledge that the testimony or documentary evidence is false.

■ When reviewing a decision on a motion to dismiss an indictment, this Court "accords great weight to a trial justice's * * * findings; we will not set them aside 'unless they are clearly erroneous or fail to do justice between the parties.'" *State v. Reed*, 764 A.2d 144, 146 (R.I.2001) (quoting *State v. Aponte*, 649 A.2d 219, 222 (R.I. 1994)).

According to Rule 7(c) of the Superior Court Rules of Criminal Procedure, an indictment:

"shall be a plain, concise and definite written statement of the offense charged. * * * [The indictment] shall

be sufficient if the offense is charged either (1) by using the name given to the offense by common law or by statute, or (2) by stating the definition of the offense * * *."

In denying Sivo's motion to dismiss the indictment, the trial justice found that the indictment provided him with adequate notice of the offense. He also concluded that the state went beyond the requirements of the indictment by describing the perjurious testimony as having been given "falsely, knowingly, maliciously, willfully and corruptly." Furthermore, the trial justice observed that Sivo had the opportunity to move for a bill of particulars, to obtain greater factual detail, but failed to do so. *See State v. Mollicone*, 654 A.2d 311, 319, 325 (R.I.1995); *see also* Rule 7(f).[3]

■ We are satisfied that defendant's argument is without merit. The language of the statute is clear and unambiguous, and Sivo's interpretation is simply incorrect: when a defendant knowingly has made a false material declaration under oath, he or she has committed the crime of perjury. To hold otherwise would result in attributing a nonsensical and awkward meaning to the statute. Furthermore, the indictment was sufficiently definite on its face to afford Sivo notice and an opportunity to defend. Therefore, we hold, the trial justice did not err in denying the motion to dismiss.

### B. Motion for Judgment of Acquittal

■ At the conclusion of the state's case, Sivo moved for judgment of acquittal in accordance with Rule 29 of the Superior

---

**3.** Rule 7(f) of the Superior Court Rules of Criminal Procedure in effect at the time of this trial provided:

"*Bill of Particulars.* Upon motion of a defendant the court shall direct the filing of a bill of particulars. A motion for a bill of

particulars may be made before arraignment or within ten (10) days after arraignment or at such later time as the court may permit. A bill of particulars may be amended at any time subject to such conditions as justice requires."

Court Rules of Criminal Procedure and later renewed this motion incorporating the arguments he made earlier. Sivo argued to the trial justice and again to this Court that subsection (c) of the perjury statute, § 11–33–1, requires proof of two contradictory statements to establish guilt, but the state only proved that Sivo made one allegedly inaccurate statement.

Section 11–33–1(c) provides in pertinent part: .

"In any prosecution under this section, the falsity of a declaration set forth in the indictment or information shall be established sufficient for conviction by proof that the defendant on oath or affirmation made *irreconcilably contradictory declarations* material to the point in question." (Emphasis added.)

The state argues that § 11–33–1(a)[4] "stands on its own and sets forth in very strong and clear terms," that every person "who knowingly makes *any* false material declaration" under oath shall be deemed guilty of perjury, thereby refuting defendant's argument that two statements are necessary to establish guilt. The state further contends that subsection (a) of § 11–33–1 "does not contain reference to or depend upon subsequent subsections to establish what constitutes perjury." Most persuasive, however, is the state's argument that if Sivo's interpretation were correct, "the statute would enable one to repeatedly and knowingly testify falsely under oath with impunity" as long as the declarations were not "irreconcilably contradictory." We are satisfied that such an interpretation amounts to an absurd and manifestly unintended construction of the statute.

On review of a judgment of acquittal, we apply the same standards as the trial justice and view the evidence in the light most favorable to the state, without weighing the evidence or assessing the credibility of the witnesses, while drawing all reasonable inferences consistent with the guilt of the accused. *State v. Forbes,* 779 A.2d 637, 640–41 (R.I.2001). In addition, this Court consistently has held "that statutes must be interpreted to avoid absurd or unjust results." *New England Expedition–Providence, LLC v. City of Providence,* 773 A.2d 259, 262 (R.I.2001) (citing *LaPlante v. Honda North America, Inc.,* 697 A.2d 625, 628 (R.I.1997)).

Here, the trial justice properly found that section (c) is not the only means of establishing the falsity of the statements in question. Rather, it addresses the quantum of proof required to prove perjury if the state had contended that defendant uttered two irreconcilably contradictory declarations that were material to the issue in question. The trial justice observed that the mere fact that the state had not proven a contradictory statement was not fatal to the prosecution. He concluded that one false statement given under oath is sufficient to constitute the crime of perjury if it was material and uttered with the knowledge that it was false. He also recognized that, if believed, Rossi's testimony could establish that Sivo intended to fabricate an alibi for Marchetti by creating a scenario that included Marchetti in Sivo's activities on the evening of August 4, 1995, and thus establish that Sivo did "with knowledge, corruptly and willfully" commit the crime of perjury.

We agree, and hold that one false statement given under oath can be sufficient to

---

**4.** General Laws 1956 § 11–33–1(a) provides: "Every person under oath or affirmation who knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing it to contain any false material declaration, shall be deemed guilty of perjury."

constitute the crime of perjury. Therefore, we affirm the denial of the motion for judgment of acquittal.

### C. Denial of Supplemental Jury Charge

■ Sivo next contends that the court erred in denying his request to supplement the court's perjury instruction with language from § 11–33–1(c) after the jury requested that the court read back the legal definition of perjury during deliberations.

After the jury had deliberated a number of hours, a communication from the foreperson was received by the trial justice that included a request for the court to "[r]eview the legal definition of perjury." The trial justice called the jury into the courtroom and had the stenographer re-read the court's instruction defining perjury:

"Perjury is defined as the giving of a false oath in a judicial proceeding in regard to a material matter. A false oath is a willful and corrupt, sworn statement made with knowledge that it is false. The testimony assigned as perjury must be false and must be given willfully and corruptly and with full knowledge that the testimony was false for the purpose of having that false testimony believed by another. * * * That is, he must have believed that what he swore to was false and he must have had the intent to deceive. * * * Untrue testimony may be given by mistake or defect of memory without guilt of perjury or any other crime."

Although Sivo did not object when the court initially gave the instruction, following the read-back, the defense objected to the court's omission of the last sentence of § 11–33–1(c), namely: "It shall be a defense to an indictment or information made pursuant to this subsection that the defendant, at the time he or she made each [irreconcilably contradictory] declaration, believed the declaration was true." In response to the objection, the prosecution argued that the case did not deal with irreconcilably contradictory declarations as the defense previously argued. The trial justice declined defendant's request to supplement the instruction. We deem this ruling to be correct.

■ In reviewing a trial justice's charge to a jury, we have held that the instructions "need only adequately cover [ ] the law." *See State v. Hanes*, 783 A.2d 920, 925 (R.I.2001). We refrain from isolating single sentences in the instructions; instead, we examine the challenged portion in the context in which it was delivered to ascertain how a jury composed of ordinary, intelligent lay people would have understood the instructions. *Id.*

We are satisfied that the trial justice's charge was more than adequate. The instruction as given presented no danger of prejudicing Sivo or of misleading the jury. The court clearly instructed that to return a verdict of guilty, the jury must be satisfied beyond a reasonable doubt that Sivo had knowledge that his statement was false at the time he testified at the bail hearing.

## II

### Admission of Out–of–Court Statements

During direct examination, Michael Rossi testified that he, Sivo, and Marchetti, while they were together in the Acciardo apartment, "were kicking different ideas around to try to formulate an alibi." When Rossi was asked by the prosecutor "whether it made a difference whether Louie [Marchetti] was with [Sivo] or not [the evening of the burglary]," his response was, "he didn't come right out and say it but it was obvious." Sivo suggests

"for the most part, that Rossi did not perceive the information through the use of his physical senses," and that Rossi's answers were "utter and complete conjecture."

On appeal, Sivo argues that the trial court improperly admitted a hearsay statement from the witness that was not predicated on his personal knowledge. We disagree for the following reasons.

■ Sivo relies on Rule 602 of the Rhode Island Rules of Evidence, which says that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." The defendant vigorously challenged Rossi's credibility, and maintains that the court erred in admitting testimony that was "conflicted by reality." We have held that a Rule 602 determination is best made by the trial court through firsthand observation of the witness. *State v. Nhek*, 687 A.2d 81, 82–83 (R.I.1997) (citing *State v. Ranieri*, 586 A.2d 1094, 1098 (R.I.1991)). When the trial justice is evaluating competency under Rule 602, the court is not judging whether the witness is accurately and truthfully relating his perception. Id. And even if the determination is a "close call," the court should admit the testimony so that the jury can evaluate the witness's credibility. Id. Here, according to Rossi, he was in the same room when the alibi discourse between Sivo and Marchetti was unfolding. Thus, these were not statements that another source had related to him, as in *State v. Tempest*, 651 A.2d 1198, 1212 (R.I.1995), which Sivo cites as support for the exclusion of this evidence. Here, the jury was in the position to evaluate the truthfulness of Rossi's conclusion that the obvious purpose of the discussion between Sivo and Marchetti was to concoct an alibi that placed Marchetti with Sivo on the night of the burglaries. Therefore, the trial justice did not err in admitting this testimony.

■ Additionally, defendant argues on appeal that hearsay elicited from Rossi was improper and harmful. During direct examination, the prosecutor asked Rossi, "[did] Louis Marchetti say anything about what he's going to testify to?" At that point, the defense objected, alleging hearsay. At side bar, the prosecutor argued that the answer should be admitted, reasoning that "Marchetti's words are adoptive admissions of Sivo." In overruling the objection, the trial justice found that in addition to qualifying as adoptive admissions, the statements were "acts or declarations of a co-conspirator admissible against all parties and exempted from the hearsay prohibition." The trial justice admitted Rossi's challenged statement:

"Q: When you say kicking different ideas around, who is kicking the ideas around?

"A: John [Sivo] and Louie [Marchetti] are talking. They're discussing—I believe [Sivo] wasn't exactly sure if he had rented a beach house at that time. He was to check the records. And if it was to be that time, he said, *'I'll just say Louie was there'* * * *." (Emphasis added.)

■ These statements are not hearsay. Although the question by the prosecution had the potential to elicit a hearsay statement of Marchetti, Rossi's response concerned what Sivo had said, not Marchetti. Therefore, the testimony was admissible under Rule 801(d)(2)(A) of the Rhode Island Rules of Evidence, providing that a party's own statement offered against him is not hearsay. However, even if Rossi had testified to what Marchetti said, his response would not qualify as hearsay, and therefore the trial justice's ruling on defendant's hearsay objection was proper.

Any testimony about Marchetti's statements would have fallen under both the co-conspirator and the adoptive admission exceptions to the hearsay rule.

Accordingly, we are satisfied that Rossi's testimony qualified as non-hearsay evidence, and we hold the trial justice did not err in admitting these statements.

## III

### Knowledge of the Crime of Perjury

■ Sivo next argues that the trial justice should not have permitted the state to cross-examine him concerning his understanding of the crime of perjury because the question called for a legal conclusion. He also contends that the questions challenged at trial decreased the state's burden of proof in this case and impermissibly shifted the burden of proof to him because he had been a policeman.

When the state asked Sivo if he knew the legal definition of perjury, the court sustained his objection. At side bar, the prosecutor suggested that he was attempting to defuse a potential defense strategy. He thought Sivo might contend that he originally testified in a manner he thought was truthful, but then later discovered he was mistaken. The prosecutor suggested that he was attempting to prove that Sivo understood the law of perjury and, from the time he first testified under oath, Sivo knew exactly what defense he could claim if he were accused of perjury. The prosecutor also disclosed that the inquiry would end if Sivo admitted he did not know the elements of perjury. After this side bar discussion, the state asked the same question again and defendant answered, "Not word for word." Then the state asked, "to your knowledge, if you testified in court to something you believed that turned out to be a lie, is it your understanding that that's perjury?" Following an objection,

the court instructed members of the jury that later in the trial the court would offer them a definition of "perjury" that the jury should follow. The state then rephrased the question and asked, "Is it your understanding that what you did on March 26 of 1996 was perjury?" The defense objected again and the trial justice sustained the objection.

■ According to Rule 401 of the Rhode Island Rules of Evidence, decisions concerning the relevancy of evidence are left to the sound discretion of the trial justice. This Court will not disturb such a decision as long as there is some ground in the record to support the trial court's decision. *See State v. Botelho,* 753 A.2d 343, 350 (R.I.2000). Here, the record shows that the trial justice believed that Sivo's testimony was relevant because "[it] goes to the issue of his knowledge of the law when he testified, or his lack of knowledge when he testified on March 26, 1996." Notably, the trial justice instructed the jury that the questioning was relevant to the defendant's state of mind and did not serve as an instruction on the elements of the crime. During the closing charge to the jury, the court sufficiently defined the crime of perjury and reminded the jurors that the burden of proof always was with the state.

In any event, the witness never answered the challenged inquiry:

"Q: Is it your understanding that what you did on March 26 of 1996 was perjury?

"Defense: Objection.

"The Court: Objection sustained."

■ A trial justice's evidentiary rulings during cross-examination will be disturbed only in situations in which an alleged abuse of discretion caused prejudice to the moving party. *See State v. Roderigues,* 656 A.2d 192, 195 (R.I.1995). Here, Sivo never

answered the state's questions on this point except to say that he did not know the definition "word for word." We hold that the trial justice did not commit prejudicial error in this regard.

## IV

### Denial of the Cooperating Witness Charge

■ Finally, Sivo contends that the trial justice should have given a cooperating witness charge. Sivo asked the court to instruct the jury that a cooperating witness's testimony should be examined "with greater care than the testimony of an ordinary witness," that it should be scrutinized "closely to determine whether it is colored in such a way as to place blame upon the defendant in order to further the witness' own interest," and that it should be received "with caution." He reasons that the state's entire case derived from a cooperating witness with an incentive to lie.

■ As we have ruled repeatedly, it is not necessary for a trial justice to give an accomplice charge. *See State v. Marrapese,* 583 A.2d 537, 545 (R.I.1990); *State v. Mastrofine,* 551 A.2d 1174, 1176 (R.I. 1988); *State v. Fenner,* 503 A.2d 518, 525 (R.I.1986).

"It is not the function of a trial justice to act as advocate for either the prosecution or the defense. Counsel are given adequate opportunities to argue matters of credibility, including bias, motivation, anticipated benefits or rewards. In this jurisdiction judges are inhibited from commenting upon the evidence unless they do so in a completely impartial manner." *Fenner,* 503 A.2d at 525.

"[A] trial justice is not required to give specific instruction requested by a party so long as the charge of the trial justice adequately covers the subject matter relating to the request." *Id.*

Here, the trial justice thoroughly charged the jury on how to "carefully scrutinize all of the testimony given from the witness stand." He told the jury to consider the witnesses' "interest or lack of interest in the outcome of this case" as well as "any demonstrated bias, prejudice or hostility of a witness." Specifically, he instructed:

"[Y]ou have heard evidence that Richard Hartley and Michael Rossi have been convicted of various crimes and have been sentenced for criminal activity. It is proper for you, the jury, to take that evidence into account in assessing the likelihood whether or not either or both was telling the truth from this witness stand."

Furthermore, as the state suggests, Sivo's counsel subjected both Hartley and Rossi to extensive cross-examination. In his closing argument, he also hammered away at these witnesses and their cooperative arrangements with the government, while pointing out that both witnesses were career criminals. We hold there was no error in failing to instruct the jury using the specific language that Sivo requested.

### Conclusion

For the reasons stated above, we deny and dismiss the defendant's appeal and affirm the judgment of the Superior Court.